PATRICK O'ROURKE, Adm'r of the Estate of John E. O'Rourke, Deceased, Plaintiff-Appellant, v. CHARLES OEHLER, JR., *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0717

Opinion filed August 24, 1989.

W. Loren Thomson, of Bloomington, for appellant.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (John L. Morel, of counsel), for appellees.

JUSTICE LUND delivered the opinion of the court:

This case involves a claim for damages premised on the death of decedent John E. O'Rourke (O'Rourke). O'Rourke was allegedly electrocuted as a result of a ladder which he was using coming into contact with electrical wires while he was performing work preliminary to the painting of outbuildings on a farm owned by defendant Ilene E. Risser and occupied by defendant Charles Oehler, Jr. At the time O'Rourke was fatally injured, he was employed by the McLean County Service Company with which Risser had contracted for the painting of the outbuildings on her farm. Plaintiff Patrick O'Rourke, the administrator of O'Rourke's estate, appeals the entry of summary judgment in favor of defendants on all counts of his complaint.

Evidence concerning the circumstances of O'Rourke's death is contained in depositions of Oehler and Risser.

At his deposition, Oehler testified Risser owns the farm which he leases and that she pays for the maintenance of the house and buildings on the premises. Risser arranged for the painting work which O'Rourke was performing when he was killed.

On the morning O'Rourke began stripping the old paint from the outbuildings, Oehler loaned him a 100-foot-long drop cord which was designed for outdoor use. Oehler stated he told O'Rourke before he started on the job, "[B]e careful. *** You can see them wires up there, this and that ***." According to Oehler, O'Rourke responded, "I know they are there."

The wiring in the area in which O'Rourke was allegedly electrocuted was installed almost 50 years ago by an individual whom Oehler's father hired for the job. About seven or eight years prior to the fatal accident, a portion of the wiring on the premises other than the wires in question was replaced in conjunction with the building of a new home on the property. Also during the time that Oehler leased the property, some overhead insulated wires were installed on the premises in connection with the installation of a vapor light.

When O'Rourke was killed, the wires which allegedly caused his electrocution were "corroded, they were green like copper does."

Oehler stated he discussed the wires with O'Rourke on the Monday that he commenced work on the premises; he did not discuss the wires with O'Rourke on the following Thursday, which was the day O'Rourke was killed. Oehler stated he gave O'Rourke no warnings or instructions with respect to anything other than the wires.

During the three days prior to O'Rourke's death, Oehler had observed him using a water stripper and getting himself wet in the process. It was raining on the day O'Rourke was killed. At approximately 11 a.m. on that day, Oehler looked out through a window of his house and saw an aluminum ladder, which O'Rourke had been using, leaning against the wires and touching the ground. The ladder was farther away from the barn on which O'Rourke had been working than it should have been, which caused Oehler to suspect something was amiss. He immediately went outside and saw O'Rourke's body lying on the ground on its back. The left foot was on the ladder, which was hooked to the uppermost of two power lines. When he first discovered O'Rourke's body, Oehler noticed no arcing or sparking where the ladder touched the wire.

Oehler acknowledged he had no need for light in the buildings to which the wires in question provided electricity and could have gotten along without power in those buildings. Since Oehler started living on the property in 1948, no one from the power company had checked the wiring beyond the meter. Oehler acknowledged he knew that the wires in the vicinity where O'Rourke was killed were uninsulated, but that he did not inform O'Rourke of this fact.

According to Oehler, Risser was not present when O'Rourke was working around the wires. Oehler admitted he saw O'Rourke placing the aluminum ladder against the barn in order to repair and maintain it on the day he was killed.

On cross-examination, Oehler stated that at the point at which the uninsulated wires entered the barn on which O'Rourke was working at the time of his death, the top wire was 17 feet 2 inches from the ground, and the second wire was 10 inches below the top wire. Also on cross-examination, Oehler stated that on O'Rourke's third day on the job, he said to him, "[B]e careful with all that," and that he specifically mentioned the wires to O'Rourke at that time. To this O'Rourke responded, "he knew it." Oehler stated O'Rourke could not have asked him to turn off the power to the outbuildings because O'Rourke needed the power to run the pressure washer which he was using. In addition to the ladder, some of the other tools which O'Rourke was using, such as his washer, were metal. Oehler estimated that when he discovered O'Rourke's body, the aluminum ladder

was 10 to 12 feet directly west of the barn on which he had been working.

In her deposition, Risser testified she owns the farm on which Oehler resides. Oehler leases the farm from Risser on a 50-50 share crop basis. Risser has always been responsible for the maintenance of the buildings on the farm and the expenses thereof. Risser arranged to have the buildings on the farm stripped and painted during the summer of 1982 by McLean County Service Company. Risser was not present when McLean County Service Company inspected the buildings in order to prepare an estimate for the work and was not present while O'Rourke was working on the farm prior to his death. She did, however, know when the paint-stripping work was being done because Oehler, who is her brother, calls her almost every day.

Prior to O'Rourke's death, Risser was aware of the existence of the wires which allegedly caused him to be electrocuted. No one had ever suggested that the wires be insulated or raised.

Risser further testified that if she had been informed by Oehler that McLean County Service Company's work was damaging the farm buildings or machinery, she probably would have gone to the farm and stopped the work. Risser acknowledged that after McLean County Service Company gave its original estimate, she caused the estimate to be reduced by stating she did not want the roofs of the buildings painted. She did not inquire of McLean County Service Company as to how the work was going to be done or what equipment was going to be used. Also, Risser did not own the ladder involved in the accident. Risser stated she had no knowledge as to the color or condition of the wires in the area where O'Rourke was killed.

Risser further testified that during the spring preceding O'Rourke's death, a Mr. Clawson did some work on the farm which was apparently necessitated by a severe storm. At that time, Clawson asked Oehler if Risser would consider replacing some wires which were bare. Oehler related this inquiry to Risser, and Risser immediately called Clawson and told him to replace the wires because, "anybody tells me to do something, I do it." Risser stated Clawson gave her no reason as to why the wires needed to be replaced. She did not know which wires Clawson specifically had in mind.

Count I of plaintiff's complaint, directed to Oehler, alleges Oehler breached his duty to use due care with regard to O'Rourke in that he:

"a. failed to warn the decedent that said wires were uninsulated;

b. failed to repair and replace said wires, when the insulation thereupon became detached;

c. maintained uninsulated electrical wires when the same could arc and injure Plaintiff's decedent.

d. failed to cut off power to the wires where he knew the decedent was working in close proximity to them."

Count II, directed to Risser, alleges she knew or should have known of the dangerous condition of the wires and that O'Rourke would be required to work in close proximity to them. This count alleges Risser breached the duty of care which she owed to O'Rourke in the same manner that count I alleges Oehler breached his duty of care with respect to O'Rourke.

Count III, directed to Risser, is premised on alleged violations of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, pars. 60 through 69). It alleges Risser was responsible and in charge of the maintenance, painting, and repair of the buildings on the farm occupied by Oehler. Count III further states:

"Risser was in charge of said [painting] work, reserving to herself the right to supervise said work, which she did through her tenant and agent, Charles Oehler. She reserved to herself the right to stop the work and to change the work, and she made the decision to have the work performed, and she, in fact, did change the work that was to be done."

Count III additionally states (1) that in the performance of his work on the premises, O'Rourke had to use an aluminum ladder and had to move it from place to place and climb on it; and (2) O'Rourke had to use the exterior sides of the farm buildings on which he was working as support for the ladder, since the ladder could not stand by itself. Plaintiff alleged Risser committed the following specific violations of the Structural Work Act:

"a. [B]are uninsulated electrical wires were maintained and charged with electricity where Plaintiff's decedent was required to place his ladder on the support of the building;

b. there were no warnings to Plaintiff's decedent as to the fact that the wires running to the structure or building upon which he was working and upon which he had to place his ladder for support were bare, uninsulated, and charged with electricity;

c. failed to maintain insulation on the electrical wires aforesaid or to replace said electrical wires running to the structure upon which Plaintiff's decedent supported himself while repairing and maintaining the same;

d. failed to turn off the electricity running through said bare and uninsulated wires when Plaintiff's decedent was work-

ing in proximity thereto, so as not to injure or kill him."

In an order entered September 6, 1988, the circuit court allowed defendants' motion for summary judgment. The court held there is no duty on the part of a nonresident landlord or tenant in possession to warn of the dangers posed by electrical wires, as electricity constitutes an open and obvious danger, which is of common knowledge to both adults and minors. With regard to plaintiff's Structural Work Act claim against Risser, the court stated the ladder which O'Rourke was using at the time of his death was not then being used as a structure, and there was no failure of any structure or device which caused O'Rourke's death. The court further stated Risser was not "in charge" of the work in which O'Rourke was engaged when he was killed. On the same date, the court struck an affidavit of Dr. Edmund T. Dorner, which plaintiff had filed in opposition to defendants' motion for summary judgment.

We first consider plaintiff's contention the circuit court improperly entered summary judgment as to counts I and II, which are premised on alleged ordinary negligence on the part of defendants. Plaintiff asserts because there were genuine issues as to material facts, the circuit court improperly entered summary judgment in defendants' favor as to these counts. Plaintiff asserts the contradictions in Oehler's deposition testimony as to how often he warned decedent concerning the wires establish the existence of factual issues as to whether defendants breached their duty to warn O'Rourke concerning the wires. Plaintiff also asserts if O'Rourke was warned concerning the wires, the warning was not a meaningful warning, considering some of the wires on the premises were insulated and others were not and O'Rourke used a 100-foot insulated power cord with no trouble during the day immediately preceding his death.

The plaintiff further observes that in its summary judgment order, the circuit court addressed only plaintiff's allegation defendants failed to warn O'Rourke of the uninsulated condition of the wires and did not deal with plaintiff's remaining allegations of breaches of duty on the part of defendants. Plaintiff argues the allegations as to (1) defendants maintaining uninsulated wires which could arc and cause injury and (2) defendants' failure to repair and replace wires when the insulation thereon became detached are uncontradicted and are supported by the deposition testimony of Oehler and Risser. Plaintiff further argues his allegation that Oehler failed to cut off the power to the wires when he knew O'Rourke was working in close proximity to them is supported by Oehler's deposition testimony.

The plaintiff maintains that in cases where a decedent has been

electrocuted as a result of coming into contact with power lines maintained by a utility company, courts have held there is a duty to insulate, deenergize, or warn of the presence of the uninsulated wires, even if the injured party had advance notice of their presence, and even if it was not foreseeable persons would be working in the presence of the wires. The plaintiff asserts that in this case, an even higher standard of care should apply than applies in cases where the defendants are utility companies, since it was necessary for O'Rourke to work around the bare, uninsulated wires, and defendants knew O'Rourke was working around them.

Also, the plaintiff states that by concluding O'Rourke should have appreciated the danger of the electrical wires, the circuit court relied on the pure form of contributory negligence. The plaintiff also argues the trial court accepted the view that by comprehending that a dangerous condition might exist, an invitee absolves the one who created the condition from any liability. The plaintiff contends that the principle which should instead be applicable to this case is that landowners are liable for harm caused to invitees if the owners should anticipate harm to them despite the obviousness of a dangerous condition on the premises.

Finally, plaintiff argues that the wires involved in this case were deceptive in appearance, because their corroded condition gave them the appearance of being insulated. Plaintiff asserts this distinguishes the present case from the cases on which the circuit court relied in its summary judgment order.

The defendants argue the cases relied upon by plaintiff are inapposite to the present case, because all of those cases involved utilities which are in the business of distributing electrical energy. Defendants assert there is no basis for plaintiff's contention landowners or tenants have the same high duty of care as electrical utilities with regard to warning of or protecting against the dangers posed by electricity. The defendants assert they did not owe O'Rourke a duty to warn of the presence of uninsulated wires or to insulate the wires which allegedly caused his electrocution, because (1) the electrical wires were in plain view and were not hidden or concealed; (2) the dangers posed by electricity are common knowledge, and O'Rourke should have been equally aware with defendants of all of the dangers of the premises on which he was working at the time of his death; (3) the electrical lines which allegedly caused O'Rourke's death were approximately 17 feet above the ground; (4) the minimal risk of injury caused by uninsulated electrical wires in a rural area does not justify imposing upon the public the burden of insulating the wires; and (5) there are no

facts which indicate distractions of O'Rourke which would have caused him to forget about or to fail to realize the danger of working near the power lines in question.

In his reply argument, plaintiff asserts under the circumstances here present, it was foreseeable to defendants that O'Rourke could stumble, "the wind could catch the ladder," or some other event could occur which would cause the ladder O'Rourke was using to come into contact with the power lines.

■ Summary judgment is properly entered where the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) In ruling upon a motion for summary judgment, the evidence must be construed strongly against the movant and liberally in favor of the opponent. *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50.

■ ■ Generally, the owner or occupant of a premises has a duty to properly maintain electrical wiring on the premises which he or she (as opposed to a utility company) owns or controls and to safeguard those on the premises from dangers posed by such wiring. (29 C.J.S. *Electricity* §57, at 1128 (1965).) In this case, there is evidence the wires which allegedly caused O'Rourke to be electrocuted were uninsulated and corroded, and were at least 16 feet above the ground. From this a jury could reasonably infer the uninsulated wires appeared insulated to a person standing on the ground beneath them. Considering Oehler acknowledged in his deposition he did not specifically mention to O'Rourke that the wires were uninsulated, a question of material fact exists as to whether Oehler breached his duty to safeguard O'Rourke from the danger posed by wires in the area where he was killed.

■ ■ With respect to count II, alleging ordinary negligence on the part of Risser, we reach the same result as we do with regard to count I. Ordinarily, a lessor of real estate is not liable for injuries sustained by a third party as a result of a failure to keep the property in repair. However, an exception to this rule exists where the lessor has by covenant with the tenant agreed to keep the premises in repair or where the lessor has regularly performed a certain type of maintenance work on the premises. (*Wright v. Mr. Quick, Inc.* (1985), 109 Ill. 2d 236, 486 N.E.2d 908; *Kuhn v. General Parking Corp.* (1981), 98 Ill. App. 3d 570, 424 N.E.2d 941.) In the case at bar, Risser testified she has always been responsible for maintenance of the buildings on the farm occupied by Oehler, and she specifically stated she had

given permission during the spring preceding O'Rourke's death for some "bare" wires to be replaced on the premises. This testimony, taken together with Oehler's testimony, created a question of material fact as to whether Risser knew or should have known of the condition of the wires which allegedly caused O'Rourke's death and whether she should have provided a warning as to their condition before O'Rourke began working on the premises.

The cases upon which defendants principally rely in support of their argument summary judgment was properly entered as to counts I and II (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465; *Icenogle v. Myers* (1988), 167 Ill. App. 3d 239, 521 N.E.2d 163; *Carroll v. Commonwealth Edison Co.* (1986), 147 Ill. App. 3d 909, 498 N.E.2d 645; *Fisher v. Crippen* (1986), 144 Ill. App. 3d 239, 493 N.E.2d 1204) are factually distinguishable. None of those cases involved electrical wires controlled and maintained by the property owner, and the power lines at issue in those cases were not in such a condition that they possibly conveyed an appearance of being insulated when in fact they were uninsulated. For the foregoing reasons, we reverse the circuit court's summary judgment order as to counts I and II.

We next consider whether the circuit court erred in entering summary judgment as to count III, which is directed to Risser and premised on alleged violations of the Structural Work Act (Act). The relevant provisions of the Act provide:

"[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1985, ch. 48, par. 60.

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof ***." (Ill. Rev. Stat. 1985, ch. 48, par. 69.)

Plaintiff contends that because Risser was responsible for maintenance of the buildings on the premises occupied by Oehler, contracted with McLean County Service Company for the painting of the buildings, and retained the right to stop the work and remove the workers from the premises if the work was not satisfactory, she was "in charge" of the painting work within the meaning of the Act. Also, the plaintiff argues the trial court essentially held there is no liability under the Act when a workman is erecting or putting a scaffold into place prior to its being used. The plaintiff argues this represents too narrow a view of the purposes of the Act and states that it is not permissible for a court to "dissect out" what a workman was doing at the precise moment of injury from the overall picture of what was occurring at the jobsite. Plaintiff argues that in this case the periodic movement of the ladder was an integral part of the work which O'Rourke was performing when he was electrocuted. Also, plaintiff contends the ladder, the buildings being painted, and the wires were all a part of the operation in which O'Rourke was engaged at the time of his death, because the ladder was required for access to the buildings, the ladder could not stand alone, and the wires were attached to the buildings.

Risser asserts the Act is inapplicable to the facts of this case, because the ladder was not being used as a structure at the time of O'Rourke's death, and there was thus no failure of a structure which caused O'Rourke's alleged electrocution. Risser also points out that when O'Rourke was killed, he was not passing by or under a structure from which something fell and struck him.

Risser argues alternatively that even if the ladder was a structure within the meaning of the Act, O'Rourke's electrocution was proximately caused by O'Rourke's negligence and was not caused by a violation of the Act. Finally, Risser argues that even assuming the Act is applicable to the facts of this case and O'Rourke's electrocution was proximately caused by a violation of the Act, she was not "in charge" of the work within the meaning of the Act. Risser's bases for this contention are that she was not present at the time of O'Rourke's death or at any other time while the work relating to the painting of the outbuildings was being performed, she did not know the details of the manner in which the work was being performed, and she did not own or provide O'Rourke with the ladder which he was using at the time of his death.

The Act is designed to protect those engaged in work activities of a particularly hazardous nature and to lessen the extent of danger therefrom. (*Halberstadt v. Harris Trust & Savings Bank*

(1973), 55 Ill. 2d 121, 127, 302 N.E.2d 64, 67.) The Act is not, however, intended to cover any and all construction activities or all injuries at or near a construction site. (*Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 155, 481 N.E.2d 709, 711.) The coverage of the Act should not be expanded by strained or unnatural interpretations, especially if other remedies are available to the plaintiff. *Smith v. Excello Press, Inc.* (1988), 169 Ill. App. 3d 1084, 1097, 523 N.E.2d 1231, 1239.

■ Among the elements which must be established in order to recover damages under the Act is a defect in a structure or support device which proximately caused the injuries complained of. Also, the defendant must have been in charge of the work. (*Fisher*, 144 Ill. App. 3d 239, 493 N.E.2d 1204; *Smyrniotis v. Brockob Construction Co.* (1986), 142 Ill. App. 3d 340, 491 N.E.2d 1246.) The Oehler and Risser affidavits establish there are no issues of material fact concerning these matters.

■ In this case, as in *Smyrniotis*, the evidence did not establish a defect in a structure or support device caused the mishap which formed the basis for the plaintiff's Structural Work Act claims. Rather, the cause of the accident was electrical energy flowing through power lines. Also, Risser did not in any manner supervise the painting of the outbuildings on her farm or any of the steps preparatory to painting the buildings. She was not present at any time while the work was being performed and did not direct that any changes be made in the work as it was being performed. Mere ownership of a premises on which structural work was being performed or retention of the right to reject or stop the work is not a sufficient basis for holding an individual is "in charge" of structural work within the meaning of the Structural Work Act. (See *Manisco v. Marseilles Fire Protection District* (1985), 132 Ill. App. 3d 390, 477 N.E.2d 534; *Melvin v. Thompson* (1963), 39 Ill. App. 2d 413, 188 N.E.2d 497.) Risser's role in the painting of the outbuildings did not exceed these parameters. There being no issues of material fact as to whether O'Rourke's death was caused by a defect in a support structure or device or as to whether Risser was "in charge" of the work, the circuit court properly entered summary judgment in Risser's favor as to count III. *Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 463 N.E.2d 921.

We finally consider whether the circuit court erred in striking the affidavit of Dr. Edmund T. Dorner, which plaintiff filed in opposition to defendants' motion for summary judgment. This affidavit reads in its entirety:

"I, Dr. Edmund T. Dorner, being first duly sworn on oath, depose and state as follows:

1. I am a Professor of Safety at Illinois State University and have taught industrial safety courses for over twenty years. My related professional achievements are set forth more fully in Exhibit 'A' attached hereto.

2. That I have reviewed the police reports, coroner investigation reports, photographs and Inquest transcripts in this matter.

3. After reviewing the aforesaid materials, I have formulated an opinion to a reasonable degree of certainty on whether Plaintiff [sic] appreciated and assessed the risk associated with the overhead power lines and my opinion is that a person of Plaintiff's [sic] age and experience under the circumstances which were present would not have assessed the risk of the overhead power lines absent a. thorough and meaningful warning as to their 'deceptive' appearance and dangerousness."

The plaintiff argues the circuit court erred in striking this affidavit, because in recent years testimony of human factors experts as to the sufficiency of the warnings on products frequently has been received in product liability cases. Plaintiff argues this affidavit supplements the other questions of material fact which were presented to the court via the pleadings and depositions. Plaintiff contends any deficiencies in this affidavit are relevant only to the weight to be accorded it and not to its admissibility.

The defendants assert the circuit court properly struck Dr. Dorner's affidavit because (1) the mental state of an individual as it relates to his appreciation or lack thereof of the obvious dangers posed by electrical wires is not a proper subject for expert testimony; (2) if this is a proper subject for expert testimony, expertise in the area of industrial safety does not qualify one to render an opinion as to an individual's mental state, and only a psychiatrist can testify as an expert concerning this subject; and (3) the affidavit is conclusory and argumentative and does not consist of facts admissible in evidence.

In his reply brief, the plaintiff contends that the circuit court has no right to strike an issue-creating affidavit at the summary judgment stage of the proceedings, because (1) the court is not the trier of fact at that stage of the proceedings and (2) the court's views of an expert's qualifications to render an opinion are immaterial at that stage of the proceedings.

■ We need not consider whether Dr. Dorner's affidavit was ad-

missible as the opinion of a human factors expert, since it is conclusory in nature. The affidavit does not list the specific matters which caused Dr. Dorner to conclude a person of O'Rourke's age and experience would not have assessed the risk of the overhead power lines, absent a thorough and meaningful warning as to their appearance and dangerousness. Affidavits submitted in opposition to motions for summary judgment must consist of facts admissible in evidence as opposed to conclusions, and conclusory matters may not be considered in opposition to motions for summary judgment. (107 Ill. 2d R. 191(a); *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201.) For these reasons, we hold the circuit court properly struck Dr. Dorner's affidavit.

The circuit court's summary judgment order is affirmed to the extent it applies to count III of plaintiff's complaint. The circuit court order which struck the affidavit of Dr. Edmund T. Dorner is also affirmed. The circuit court's entry of summary judgment as to counts I and II of plaintiff's complaint is reversed, and this cause is remanded for further proceedings as to those counts.

Affirmed in part; reversed in part and remanded.

SPITZ and GREEN, JJ., concur.