ADRIAN ROGERS, Plaintiff-Appellant, v. ENVIRODYNE INDUSTRIES, INC., Defendant-Appellee.

First District (5th Division)   No. 1—90—2826

Opinion filed June 7, 1991.

Anesi, Ozmon & Rodin, Ltd., of Chicago (Mark Novak, of counsel), for appellant.

Haskell & Perrin, of Chicago (Stephen O. Sonderby, Daniel P. Caswell, and Peter G. Bora, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff Adrian Rogers (Rogers) appeals the September 6, 1990, order of the circuit court of Cook County granting defendant Envirodyne Industries, Inc. (Envirodyne Industries), summary judgment in its favor. Although Envirodyne Industries was just one of several defendants named in plaintiff's complaint, which alleged certain violations of the Illinois Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*) and negligence, and the matter still pends in the trial court as to some of the remaining defendants, this court has jurisdiction over the appeal because the trial court included in the order the language that there was no just cause to delay enforcement and appeal. 134 Ill. 2d R. 304(a).

For the purposes of the summary judgment motion, the undisputed facts are that on March 14, 1980, Rogers was an ironworker employed by Brandt Construction Company, working on the construction of a pipe rack at the Wisconsin Steel Plant in Chicago, Illinois. While so employed, Rogers was injured when the rung of a ladder he was climbing broke and he fell to the ground. Rogers had borrowed the 20- to 25-foot wooden ladder from the John Mohr & Sons Construction Co., another company which was also doing work at the plant.

Rogers filed his initial complaint on December 10, 1980, naming Wisconsin Steel Company (Wisconsin Steel), Envirodyne Engineers Services, Inc. (Envirodyne Engineers), WSC Corp., EDC Holding Company, Envirodyne Industries, Inc., and John Mohr and Sons Construction Co. (Mohr) as defendants. The complaint was amended on July 20, 1987, to include Envirodyne Construction Services, Inc. (Envirodyne Construction), as a party defendant.[1]

Rogers alleged in his complaint that each of the defendants "owned and/or were in charge of" the construction site within the meaning of the Illinois Structural Work Act, and that they were each in wilful violation of the Act by failing to provide him with safe equipment with which he could perform his work. (Count I.) Rogers also alleged that each of the defendants was guilty of common law negligence in that they failed to inspect, operate, manage, maintain, con-

---

[1]Envirodyne Construction was later dismissed with prejudice based on plaintiff's lack of diligence in serving it and plaintiff's failure to name it in the action within the limitations period. The dismissal of Envirodyne Construction is not a part of this appeal.

trol and supervise the premises and that, as a proximate result, he was injured. (Count II.)

On August 19, 1988, Envirodyne Industries filed a motion for summary judgment, claiming that it had not been in charge of, nor had control over, the jobsite. Accompanying the motion was an affidavit which explained that Envirodyne Industries was merely a holding company without any employees engaged in the construction business. The affidavit stated that at the time of the alleged incident, Envirodyne Industries owned all the stock of Wisconsin Steel and so Wisconsin Steel was a wholly owned, separate, subsidiary corporation of Envirodyne Industries. Envirodyne Industries was also the parent corporation of Envirodyne Engineers, another wholly owned, separate, subsidiary corporation, which had been hired to provide the specifications for the reconstruction project at Wisconsin Steel. Envirodyne Construction was a separate, subsidiary corporation of Envirodyne Engineers and it provided the management services for the project.

In opposition to the summary judgment motion, plaintiff submitted the deposition testimony of Al Romanek, a superintendent for Mohr; the deposition testimony of William Heilman, plaintiff's proffered expert; and the affidavit of Jerry Sikora, another ironworker at Wisconsin Steel. Upon the motion of defendant, the trial court struck the above-mentioned depositions and affidavit submitted by plaintiff and then granted defendant summary judgment as to both counts of the complaint.

Plaintiff appeals, contending that there exists a genuine issue of material fact as to defendant's liability under either the Structural Work Act or common law negligence theories and that the trial court erred by striking the deposition testimony and affidavit. We affirm.

■ When deciding whether a trial court properly granted summary judgment, this court must review the pleadings, depositions, affidavits and admissions on file, to determine whether a genuine issue of material fact exists or whether the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *O'Rourke v. Oehler* (1989), 187 Ill. App. 3d 572, 580, 543 N.E.2d 546.) Evidence should be construed strongly against the movant and liberally in favor of the opponent. *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50.

In the present case plaintiff apparently does not dispute that Envirodyne Industries was the parent corporation and that Envirodyne Construction and Envirodyne Engineers were separate, albeit related, corporate entities. Neither does plaintiff urge this court to "pierce the

corporate veil" to impute the actions of the subsidiaries to the parent corporation. In fact, if this were the case, no doubt the stricken testimony would have been admissible to create a question of fact as to this matter. But that was not the issue before the trial court. Rather, plaintiff alleged, and continues to argue, that Envirodyne Industries' negligence or its wilful violation of the Illinois Structural Work Act was the proximate cause of injuries he sustained at the construction site. Consequently, it was plaintiff's burden to show that Envirodyne Industries was "in charge of" the jobsite and committed a wilful violation of the Act. *Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 430 N.E.2d 699.

Although these questions are generally ones of fact, where there is insufficient evidence to establish an issue of fact, judgment may be entered in defendant's favor. (*Zukauskas v. Bruning* (1989), 179 Ill. App. 3d 657, 534 N.E.2d 680; *Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 413 N.E.2d 1345.) The key issue, then, in this case is whether there existed a genuine issue of fact as to whether Envirodyne Industries was "in charge of" the jobsite.

■ According to the affidavit and deposition testimony submitted by Envirodyne Industries, it was the owner of Wisconsin Steel, which was a separate corporate entity. Thus, Envirodyne Industries was, only indirectly, the owner of the premises where plaintiff's injury took place. However, even if we were to consider Envirodyne Industries to be the owner of the premises, mere proof of ownership of the premises does not necessarily impute liability. (*Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 478 N.E.2d 1057.) Rather, liability must be premised either upon the fact that the owner maintained direct control or supervision over the work that caused the injury or that it exercised the requisite control over the overall worksite to be held responsible for ensuring worker safety. (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348.) The totality of the circumstances is what will determine whether an entity maintained sufficient control to be deemed "in charge," but some factors to be considered are whether it: (1) supervised or controlled the work; (2) retained the right to supervise and control the work; (3) participated in the ongoing activities at the worksite; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the site; (6) had authority to issue change orders; (7) had the right to stop the work; (8) owned the equipment; (9) was familiar with construction customs and practices; and (10) was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. *Simmons v. Union Elec-*

*tric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946; *Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6, 445 N.E.2d 39.

■■ In this case, plaintiff attempted to show that Envirodyne Industries participated in the ongoing activities at the worksite and maintained control and supervision over the work through the presence of its employees or representatives. To this end, it provided the deposition testimony of Al Romanek and William Heilman, as well as the affidavit of Jerry Sikora.

Jerry Sikora's affidavit states:

"1. That affiant is a Journeyman structural iron worker and was employed at the construction project going on at the Wisconsin Steel plant on 3/14/80.

2. That affiant observed individuals with the word 'Envirodyne' on their hardhats during the time he was working on said project.

3. That affiant heard individuals identify themselves as working on behalf of Envirodyne Industries at the construction site and that these individuals would, on occasion, give orders to the contractors employees [*sic*] concerning the scheduling and the manner of the work.

4. That based upon affiant's observations at the jobsite and based on the statements made by representatives on behalf of Envirodyne Industries, it was clear that Envirodyne Industries was involved in the supervision of the work at the construction site."

However, this affidavit conflicts with Sikora's earlier deposition testimony, wherein he states:

"Q. Okay, And Envirodyne—Who do you mean when you say Envirodyne?

A. Well, the people—the general contractors.

Q. Okay, Do you know—Can you remember any names?

A. John Moore and Envirodyne, maybe Wisconsin Steel. Sometimes they had—

Q. Okay, When you said some people from engineering asked you to move stuff, was that Wisconsin Steel Engineering?

A. I don't know if—I can't remember if they were there. I know Envirodyne was there.

Q. Do you know the whole name of Envirodyne because there are several Envirodynes?

A. This would be the construction department probably.

Q. Would that be Envirodyne Construction Services?

A. It could be. I am not sure.
Q. Have you heard of Envirodyne Industries?
A. No."

When reading Sikora's affidavit in conjunction with his earlier deposition testimony, it is clear that, at best, he was aware that persons who represented themselves as employees of "Envirodyne" were present at the jobsite and exercised some degree of control over it. However, it is undisputed that Envirodyne Engineers was hired to provide engineering consultation on the project and that Envirodyne Construction was hired to provide management services for the project, and that employees from both of these entities were present on an ongoing basis at the jobsite. Thus, Sikora's observation of the word "Envirodyne" on hardhats, coupled with his lack of awareness of the separate corporate identities of these Envirodyne companies, could not establish the presence of Envirodyne Industries at the worksite and his testimony to that effect was not competent.

We next consider Romanek's deposition, which was submitted for the purpose of establishing that Bill McHenry, an engineer on the worksite who appeared to have been in overall charge of the worksite, was an employee of Envirodyne Industries. However, we note that Romanek's deposition did not establish that McHenry was employed by Envirodyne Industries. In the deposition, Romanek stated:

"Well, I don't know what you mean by 'Wisconsin Steel' and 'Envirodyne.' Where do you really define the two?"

And:

"It was my understanding that Wisconsin Steel was only the name of the plant. Envirodyne was—owned Wisconsin Steel; so basically, anybody that worked for engineering when they took over, they were employed by Envirodyne. So unless there's something other than that, I don't know."

Romanek's deposition shows that although he was under the impression that McHenry worked for Envirodyne Industries, he was unaware of the corporate structures which separated Envirodyne Industries from its many subsidiaries.

Additionally, Romanek's deposition directly conflicted with the deposition testimony of defendant's witness, Stewart Mishlove, the treasurer and a member of the board of directors of Envirodyne Engineers, who unequivocally established that McHenry was an employee of either Envirodyne Engineers or its wholly owned subsidiary, Envirodyne Construction, and not an employee of Envirodyne Industries. Thus, once again, plaintiff's purported evidence that Envirodyne was exercising control over the worksite was based upon conjecture rather

than actual knowledge. Evidence submitted in opposition to motions for summary judgment must consist of facts, as opposed to conclusions, which are not to be considered. *O'Rourke v. Oehler*, 187 Ill. App. 3d at 585.

Finally, we consider the deposition testimony of William Heilman. Heilman was aware of the separate corporate structure of Envirodyne Industries since he had reviewed all of the depositions and affidavits before giving his "expert opinion" that Envirodyne Industries should be considered "in charge" of the worksite.

Initially, we question the necessity of an expert to provide an opinion on a legal matter. Heilman's deposition testimony was not offered to clarify points on safety, which is his area of expertise, but rather to make a legal conclusion that Envirodyne Industries maintained sufficient control, by virtue of its ownership of the property. However, as stated earlier, mere ownership of the property is not sufficient and, therefore, Heilman's "expert opinion" was contrary to established law.

For all the reasons stated above, we find that the trial court did not err by striking the deposition testimony and affidavit submitted by plaintiff, nor did the trial court err by granting defendant summary judgment. Plaintiff failed to establish by any competent testimony that Envirodyne Industries participated in the construction project at the Wisconsin Steel plant in such a manner that it would be considered "in charge" for purposes of the Structural Work Act. Nor did it appear that Envirodyne Industries' actions gave rise to a duty owed to plaintiff.

The order of the circuit court of Cook County granting summary judgment in favor of Envirodyne Industries and against plaintiff Rogers is hereby affirmed.

Affirmed.

LORENZ, P.J., and GORDON, J., concur.