332

JIM DeMASE, Plaintiff-Appellant, v. CHARLES TIERI, Defendant-Appellee.

Third District    No. 3—93—0848

Opinion filed October 20, 1994.

Amy Carbone, of Levin, McParland, Phillips, Leydig & Haberkorn, of Chicago (Gerald Haberkorn, of counsel), for appellant.

Cory D. Lund, of Hinshaw & Culbertson, of Joliet, and Hinshaw & Culbertson, of Chicago (Bruce L. Carmen, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:
Plaintiff was injured while repairing a swimming pool at a private residence and subsequently brought suit against the homeowner, alleging negligence and violations of the Structural Work Act (740 ILCS 150/1 *et seq.* (West 1992)). The circuit court granted summary judgment in favor of the defendant on both counts, and plaintiff appealed. We reverse and remand for further proceedings.

## I. FACTS

On April 28, 1992, the law firm of Hilliard and Hickey filed a complaint on behalf of plaintiff Jim DeMase against defendant Charles Tieri. The complaint alleged, *inter alia*, that (a) on June 20, 1990, defendant was the owner of a home in Steger, Illinois, (b) defendant acted as the general contractor for a construction project at the home, (c) defendant was in charge of the construction project, (d) defendant failed to provide plaintiff with a safe and suitable support, scaffold or ladder, and (e) as a proximate result, plaintiff was injured. Count I alleged violations of the Structural Work Act (740 ILCS 150/1 *et seq.* (West 1992)), while count II alleged negligence.

Defendant filed his answer and, later, was granted leave to file affirmative defenses. These defenses asserted that (a) plaintiff was "a sole proprietor," thereby precluding recovery under the Structural Work Act, (b) plaintiff was "in charge of" the work site at the time of the accident, thereby precluding recovery under the Structural Work Act, (c) plaintiff's own negligence was the sole proximate cause of the accident, and (d) plaintiff was contributorily and/or comparatively negligent.

On August 12, 1993, defendant filed a motion for summary judgment. Attached to the motion were the transcripts of the depositions of plaintiff, defendant, and Arthur Burchette. Viewing this evidence in the light most favorable to the nonmoving party (*Zukauskas v. Bruning* (1989), 179 Ill. App. 3d 657, 665), the depositions indicated that defendant told a friend, Art Burchette, that he had a plan to fix his leaking swimming pool by welding sheet metal around the pool and cutting the metal off at a height marked out by a surveyor. Defendant purchased the sheet metal, and the metal was then attached to the pool by Burchette and plaintiff. Prior to the work beginning,

defendant placed a pump in the pool to remove water that was seeping into it. On the first day of work, defendant came to inspect the work once or twice. Defendant told the men where to weld the sheet metal. Defendant also told the men to keep the pump plugged in.

On the second day of work, plaintiff and Burchette began the task of cutting the sheet metal. Three ladders of varying heights were utilized. Two of the ladders were supplied by the workers, while the other was provided by the defendant. It was while standing on defendant's ladder that plaintiff slipped, reached out to stop his fall, and cut his hand on the sheet metal.

On September 30, 1993, the trial court granted summary judgment in favor of defendant on both counts. On October 29, 1993, the law firm of Levin, McParland, Phillips, Leydig & Haberkorn filed a notice of appeal on behalf of plaintiff. Nothing in the record indicated that the firm of Hilliard and Hickey sought leave to withdraw its appearance on behalf of plaintiff, or that the Levin firm sought leave to appear as substitute or additional counsel for plaintiff.

## II. ANALYSIS

On appeal, plaintiff asserts that summary judgment was improperly granted because (a) a genuine issue of material fact existed as to who was in charge of the work site, (b) the issue of whether the plaintiff was a sole proprietor was a fact issue for the jury, and (c) genuine issues of material fact existed as to defendant's negligence and/or plaintiff's contributory negligence. Each of these contentions will be discussed below. First, however, it is necessary to address an issue raised by appellee that challenges the jurisdiction of this court.

### A. Jurisdiction of the Appellate Court

Based upon the fact that the notice of appeal in this case was filed by an attorney who neither served as trial counsel nor sought leave to appear on behalf of plaintiff-appellant, appellee contends that the notice was a "nullity" and therefore this court lacks jurisdiction over this appeal. Appellee cites *Chicago Public Stock Exchange v. McClaughry* (1893), 50 Ill. App. 358, *aff'd* (1894), 148 Ill. 372, for the proposition that a party may not substitute counsel without leave of court; thus, where additional counsel files a pleading without having been granted leave of court, the opposing party may treat the document as never having been filed. In *McClaughry*, the court held that plaintiff improperly attempted to change attorneys without leave of court and thereafter use new counsel's status as a member of

the legislature as a basis for obtaining a continuance. *McClaughry*, 50 Ill. App. at 361.

■ We do not believe that the decision in *McClaughry* deprives this court of jurisdiction. *McClaughry* predates the implementation of the present Illinois Supreme Court rules. (See 134 Ill. 2d R. 1 *et seq.*) In promulgating these rules, the Illinois Supreme Court could easily have mandated that an appearance by a second firm be filed only upon the withdrawal of the first firm. A review of the rules reveals that no such restriction exists. See 134 Ill. 2d Rules 13, 301, 303; *Firkus v. Firkus* (1990), 200 Ill. App. 3d 982, 988-91.

Even if the principle enunciated in *McClaughry* were still valid, the situation therein did not involve a notice of appeal. While the rule in *McClaughry* may serve an important purpose in the trial court—to protect the other party from "unjust delay" and "unnecessary vexation" (*McClaughry*, 50 Ill. App. at 361, 364)—the appellate process is not advanced by allowing an appellee to ignore a notice of appeal on such a technicality. Moreover, even if *McClaughry* were applicable to appellate procedure, in this case the appellee did not choose to ignore appellant's notice; rather, he defended this appeal on the merits. We cannot see how the appellee was prejudiced by the filing of a notice of appeal by a new firm. Cf. *People v. Chaney* (1993), 257 Ill. App. 3d 247, 250 ("The failure to comply strictly with the form of the notice of appeal is not fatal if the deficiency is one of form and not of substance, and the appellee is not prejudiced").

We conclude that we have jurisdiction over this appeal.

### B. Summary Judgment

On the merits of this appeal, this case is before this court pursuant to the circuit court's entry of summary judgment in favor of defendant. Summary judgment is a drastic method for disposing of a case. (*Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 323.) A trial court does not err in granting summary judgment for defendant if the pleadings, depositions, and affidavits show that no genuine issue of material fact exists. *Melvin v. Thompson* (1963), 39 Ill. App. 2d 413, 415.

On appeal, the reviewing court examines summary judgment orders *de novo*. (*Farmers State Bank v. National Bank* (1992), 230 Ill. App. 3d 881, 883.) When deciding whether a trial court properly granted summary judgment, this court must review the pleadings, depositions, affidavits and admissions on file to determine whether a genuine issue of material fact exists or whether the movant is entitled to judgment as a matter of law. (*Rogers v. Envirodyne Industries, Inc.* (1991), 214 Ill. App. 3d 1025, 1027.) Evidence should be construed

strongly against the movant and liberally in favor of the opponent. (*Rogers*, 214 Ill. App. 3d at 1027.) However, evidence submitted in opposition to motions for summary judgment must consist of facts, as opposed to conclusions, which are not to be considered. *Rogers*, 214 Ill. App. 3d at 1031, citing *O'Rourke v. Oehler* (1989), 187 Ill. App. 3d 572, 585.

In this case, the trial judge entered summary judgment in favor of the defendant on both the Structural Work Act and negligence counts.

Regarding plaintiff's Structural Work Act claims, we note that when presented with a variety of factual scenarios and procedural situations, Illinois courts have been reluctant to hold homeowners liable for workers' injuries sustained during repairs and reconstruction. (See *Egizio v. Majetich* (1988), 172 Ill. App. 3d 758 (summary judgment for defendants affirmed); *Gentile v. Kehe* (1987), 165 Ill. App. 3d 802 (summary judgment for defendant affirmed); *Lyle v. Sester* (1981), 103 Ill. App. 3d 208 (judgment for plaintiff reversed); *Winter v. Davis* (1980), 85 Ill. App. 3d 912 (directed verdict for defendants affirmed); *Di Prima v. Edwards* (1977), 55 Ill. App. 3d 633 (summary judgment for defendants affirmed).) These courts have based these decisions upon the concern that finding the defendants liable would "place an unreasonable burden on all homeowners who contract for improvements on their homes." *Egizio*, 172 Ill. App. 3d at 762, citing *Di Prima*, 55 Ill. App. 3d at 640.

Nonetheless, under the appropriate factual circumstances, owners of property may be held liable for injuries sustained by workers. Section 9 of the Structural Work Act imposes civil liability for willful violations of the Act upon "*[a]ny owner* *** or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure." (Emphasis added.) (740 ILCS 150/9 (West 1992).) The Act itself draws no distinction between commercial property owners and residential owners. 740 ILCS 150/9 (West 1992).

Mere ownership of the property, however, does not trigger liability. (*Fitzpatrick v. Perry Drugs Co.* (1991), 213 Ill. App. 3d 529, 532.) Rather, the Act imposes liability upon an owner who is in charge of the work. (740 ILCS 150/9 (West 1992).) Our supreme court has not offered a comprehensive definition of the phrase "in charge of." (*Zukauskas*, 179 Ill. App. 3d at 661.) Rather, the totality of the circumstances will determine whether an owner maintained sufficient control to be deemed "in charge," and some of the factors to be considered include whether the defendant (1) supervised and controlled the work, (2) retained the right to supervise and control, (3)

participated in the ongoing activities at the construction site, (4) supervised and coordinated the subcontractors, (5) took responsibility for safety precautions at the jobsite, (6) possessed authority to issue change orders, (7) had the right to stop the work, (8) owned the equipment on the jobsite, (9) was familiar with construction customs and practices, and (10) was in a position to assure worker safety by correcting unsafe habits and equipment deficiencies. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 452; *Rogers v. Envirodyne Industries, Inc.* (1991), 214 Ill. App. 3d 1025, 1028.) Thus, whether an owner was "in charge" is determined not only from his contractual obligations, but also from the surrounding circumstances and from the role the owner in fact assumed. *Fitzpatrick*, 213 Ill. App. 3d at 532.

In a case wherein plaintiff alleges a violation of the Structural Work Act, it is plaintiff's burden to show that a defendant-owner was "in charge of" the jobsite and committed a willful violation of the Act. (*Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 214.) Whether an owner was in charge of the work is a question of fact usually left for the jury. (*Zukauskas*, 179 Ill. App. 3d at 661; *Fitzpatrick*, 213 Ill. App. 3d at 532.) However, summary judgment may be entered in defendant's favor where there is insufficient evidence to establish a genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Zukauskas*, 179 Ill. App. 3d at 661.

Applying these principles, we conclude that the trial judge erred in granting summary judgment for the defendant. In his brief, defendant has asserted that he was not mechanically inclined; Art Burchette volunteered to do the job; Burchette brought along his friend, plaintiff Jim DeMase; other than telling the workers the final result he wanted, defendant never gave instructions on *how* to do the work; defendant never told the workers how to weld or cut the metal; defendant gave the workers no instructions regarding safety; plaintiff had superior experience in this type of work; plaintiff set his own hours and could come and go as he pleased; defendant had no special knowledge regarding construction customs and practices; and plaintiff "briefly" used defendant's ladder and the "significant tools" for the job were provided by plaintiff. However, Arthur Burchette testified that defendant was "mechanically intelligent" and knew what a weld and its purpose are; defendant asked Burchette if he and plaintiff would help fix the pool; defendant instructed the workers to place sheet metal on the pool; defendant told the workers the height the sheet metal should be; defendant told the workers to do the job correctly, cut on the line and make it as straight as the line; defendant told the workers to be careful, and to keep the pump plugged in

to avoid electrocution and being on a ladder in standing water; and plaintiff was standing on defendant's ladder when it slipped and plaintiff suffered his injuries. Additionally, plaintiff testified that defendant had previously had a similar problem with the pool; plaintiff had no special knowledge about pools; defendant telephoned Burchette and told him when the metal was ready to be cut; and defendant stated that he wanted the work done as soon as possible because he had a pool liner ordered and coming. Finally, in his brief, defendant conceded that he made the arrangements for doing the work and, also, he had the legal right to halt the work and to perform inspections. Viewing the evidence in the light most favorable to the plaintiff (*Zukauskas*, 179 Ill. App. 3d at 665), and being mindful that the question of who is "in charge of" the work is a question of fact that requires an evaluation of the totality of circumstances (*Zukauskas*, 179 Ill. App. 3d at 661), we conclude that the existence of a genuine issue of fact precluded summary judgment on the Structural Work Act count.

■ Nonetheless, defendant argues that the evidence proves that plaintiff was in charge of the work. We recognize that some of the evidence supports this argument. Yet, under the Act, more than one party may be in charge of the work and even be held liable for a single injury. (*Fitzpatrick*, 213 Ill. App. 3d at 532.) Thus, the conclusion that plaintiff was in charge of the work would not necessarily preclude a finding that defendant was also in charge of the work.

■ Next, plaintiff argues that the issue of whether plaintiff was a sole proprietor was a fact issue for the jury. In the past, some Illinois courts have construed the Act in a manner that prohibited an injured sole proprietor from recovering for injuries sustained. (See *Holley v. Badgerow* (1987), 162 Ill. App. 3d 572; *Dean v. Talman Home Federal Savings & Loan Association* (1987), 163 Ill. App. 3d 800.) These courts automatically equated the status of sole proprietor as being "in charge of" the work. (*Cutuk v. Hayes/ Gallardo, Inc.* (1992), 151 Ill. 2d 314, 321.) However, in 1992, our supreme court held, "There is nothing magical about the words 'sole proprietor.' By admitting to having this status, the plaintiff does not automatically doom his fate." (*Cutuk*, 151 Ill. 2d at 323.) In this case, one of defendant's affirmative defenses was that plaintiff was a sole proprietor at the time of the accident. Unfortunately, the trial judge's order fails to state whether summary judgment was granted on this basis. To the extent that plaintiff may have been adjudged to be a sole proprietor, under *Cutuk* this would not have barred plaintiff from recovering; rather, plaintiff's status is but one consideration in the factual determination of whether the defendant-owner was "in charge of" the work.

■ Finally, plaintiff asserts that summary judgment was improperly granted on the count alleging negligence. We agree. Once again, viewing the evidence in the light most favorable to the plaintiff (*Zukauskas*, 179 Ill. App. 3d at 665), defendant made the determination that the pool should be fixed by welding and cutting sheet metal; defendant and/or his surveyor decided that the line should be marked on the inside of the sheet metal, thereby determining that the workers would have to cut the metal while standing on ladders in the pool; defendant determined that a pump would be used to empty water standing in the pool; and defendant provided the ladder that plaintiff used when he slipped. While defendant points to other evidence supporting his claim that it was plaintiff who was negligent, nonetheless, genuine issues of material fact exist as to (a) whether defendant and/or plaintiff was negligent, (b) whether defendant's or plaintiff's negligence was the proximate cause of plaintiff's injury, and (c) whether plaintiff was contributorily and/or comparatively negligent. Thus, the trial judge erred in granting summary judgment.

## III. CONCLUSION

The judgment of the circuit court of Will County is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

McCUSKEY and BRESLIN, JJ., concur.