GEORGE CHANCE, Plaintiff-Appellee, *v.* THE CITY OF COLLINSVILLE, Defendant and Third-Party Plaintiff-Appellant.—(Don Garner, Third-Party Defendant-Appellant.)

Fifth District   No. 82—65

Opinion filed January 7, 1983.

8

James M. Radcliffe, of Sprague, Sprague and Ysursa, of Belleville, for appellant Don Garner.

Michael J. Nester and Clark D. Smith, both of Donovan, Hatch & Constance, P.C., of Belleville, for appellant City of Collinsville.

Charles E. Hamilton and N. Dean Nester, both of Belleville, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

On March 27, 1979, plaintiff, George Chance, filed a complaint under the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, pars. 60 through 69) (hereinafter referred to as the Act) against the city of Collinsville, Illinois (hereinafter referred to as the City). The complaint stated that on January 9, 1979, plaintiff suffered personal injuries while employed as a laborer to assist in excavation work in connection with tapping into the sewer lines of the City and that the City was in charge of this work within the meaning of the Act.

The City denied liability and also filed a third-party complaint seeking indemnification from Don Garner, the contractor who performed the excavation work. Mr. Garner, in his answer to the City's complaint, denied liability.

After a three-day jury trial in November 1981, a verdict was returned against the City in the amount of $100,000. The jury also returned a verdict in favor of the City and against Mr. Garner on the third-party complaint, awarding the City full indemnification.

The City and Mr. Garner both filed post-trial motions which alleged, *inter alia*, that the trial court erred in failing to grant directed verdicts in their favor. These motions were denied. Both the City and Mr. Garner have appealed; Mr. Garner, in his brief, has elected to adopt the arguments of the City on appeal.

This appeal raises two issues: (1) whether the City was a person "having charge of" the work under section 9 of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 69); and (2) whether an excavation is a structure within the provisions of the Act.

Louis Jackstadt, who was the sewer coordinator for the City at the time plaintiff was injured, testified at trial. Through his testimony it was established that on September 23, 1976, the City adopted Ordinance No. 1852 which specified the time and manner in which businesses and homeowners were to tap into a newly constructed sewer system. This ordinance provided that owners adjacent to sewer mains were to be notified that they had 90 days to tap into the system. It was the obligation of the business or homeowner to make arrange-

ments to tap into the main sewer line. Owners were to apply for sewer service through the city clerk's office and were required to obtain a permit to tap into the sewer system and to pay certain enumerated fees. Under Ordinance No. 1852, installations involving excavation of streets or public property required that the contractor who performed the work post a bond to restore the property to the satisfaction of the City. A list of properly bonded contractors was made available by the City but homeowners were not required to use those contractors. Ordinance No. 1852 further required that certain specifications be met regarding pipe size, pipe material and slope of the installed pipe. Connection of individual pipe lines to the sewer main was to be performed under the supervision of a representative of the City, and an inspection of the pipe line by a representative of the City was required before an excavation could be refilled.

Mr. Jackstadt indicated that on January 9, 1979, he was the only inspector employed by the City to inspect connections to the public sewer system and that on the day of plaintiff's injury, he made two or three visits to the excavation site where the injury occurred. He said that a permit for the excavation work had been issued and stated that there was some problem locating the portion of the main sewer where the connection was to be made. He recalled that it was a rather deep excavation with a depth of about 15 feet. Mr. Jackstadt said that he and Mel Heinicke, a building department inspector who shared a car with him, were standing next to the excavation when a side of the excavation suddenly caved in on plaintiff.

Don Garner testified that he contracted with a homeowner to install a sewer line which would connect a home in the 700 block of Staten Street to the city sewer main. Mr. Garner testified that the City had no part in the negotiation of the contract between the homeowner and himself, that he determined the amount he charged for the work, and that he supplied the equipment and materials for the project. Mr. Garner said that he employed plaintiff to assist with the excavation work and that plaintiff's wages and working hours were determined by plaintiff's union.

Mr. Garner stated that the City informed him of the location and depth of the tap-in point on the main sewer line and that he called the City every morning to let the City know he was working so that the City would send an inspector to the location. Mr. Garner's testimony suggested that during working hours, plaintiff was under his physical control and that it was Mr. Garner who directed plaintiff as to when and how to dig in the excavation. Mr. Garner indicated that the City had nothing to do with directing plaintiff during working hours and

that the city inspector's responsibility at the excavation site was merely to inspect the placement and type of pipe.

Mr. Garner also testified that the City had prevented him from working on three occasions, once after he had broken a water line and on two other occasions when his work resulted in damage to roads located at the excavation site where he had been working. Mr. Garner said that it was his "feeling" that he worked at the pleasure of the City.

Mr. Garner testified that prior to the cave-in which caused plaintiff's injury, there were two or three cave-ins at the excavation during the course of the day and that this information was never relayed to Mr. Jackstadt or any other city official. Mr. Garner said that just prior to the cave-in which caused plaintiff's injury, Mr. Jackstadt was suggesting places to probe which might result in locating the tap-in site. Mr. Garner testified that the decision as to whether to shore up or use jacks to support the excavation was his and that the City never gave any directions regarding safety procedures.

Plaintiff testified that a city inspector, whose name was Sid Strotheheide, according to the record, showed him how to perform various operations on the job. He stated that the city inspector merely offered suggestions and did not order that the job be performed in a certain manner. Plaintiff said that Mr. Garner, not the City, directed the manner in which the excavation was to be dug and that the city representatives were at the excavation site merely for purposes of inspecting the work. Plaintiff also said that the City did not maintain an office at the jobsite. Plaintiff corroborated Mr. Garner's testimony that Mr. Jackstadt was helping to locate the tap-in point at the time plaintiff was injured.

The City first maintains that it was not a person having charge of the work within the meaning of the Act. It is argued that under the applicable standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, the trial court should have directed a verdict for the City in the case at bar. Specifically, the City argues that: (1) the fact that the City ordinance provides for specifications for the work to be performed and gives the City the right to inspect the work is insufficient to support a finding that the City was in charge of the work; (2) the evidence does not otherwise establish that the City was in charge of the work; and (3) policy considerations suggest that the City should not be held liable.

Plaintiff replies that whether the City was in charge of the work is primarily a question of fact for the jury and that, under the circumstances presented in this case, the jury's finding that the City was lia-

ble was justified.

We first are required to determine whether the circumstances presented to the jury would give rise to a question of fact since a judgment in favor of plaintiff can be reversed only if the evidence, when viewed most favorably to plaintiff, so overwhelmingly favors defendant that no contrary verdict could stand. (*Hausam v. Victor Gruen & Associates* (1980), 86 Ill. App. 3d 1145, 1147, 408 N.E.2d 1051, 1052-53.) The phrase "having charge of" found in section 9 of the Act has no specific legal meaning but, rather, has been referred to as a term of common usage and understanding. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 323, 211 N.E.2d 247, 252.) Further, our inquiry upon review involves an assessment of the totality of circumstances. *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 490, 394 N.E.2d 403, 407.

■ The appellate courts have identified a number of factors to be considered in determining whether a defendant has charge of the work under the Act. These factors are: (1) supervision and control of the work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the jobsite; (6) authority to issue change orders; and (7) the right to stop the work. (*Hausam v. Victor Gruen & Associates* (1980), 86 Ill. App. 3d 1145, 1147, 408 N.E.2d 1051, 1053; *Westerfield v. Arjack Co.* (1979), 78 Ill. App. 3d 137, 142, 397 N.E.2d 451, 455-56.) Other factors include: (8) ownership of the equipment used on the jobsite; (9) defendant's familiarity with construction customs and practices; and (10) whether defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. (*Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 218, 430 N.E.2d 699, 707.) Considering the instant case in the light of these factors, we find that the evidence, under the totality of circumstances, is insufficient to warrant the imposition of liability upon the City.

■ First, we reject the contention that Ordinance No. 1852 provides criteria for determining whether the City was in charge of the work. The ordinance requires businesses and residents of the City to become part of a new sewer system. Additionally, the ordinance provides that contractors performing work on the sewer line obtain a permit, be bonded when public property is excavated, and comply with certain construction specifications. Most of these requirements are necessary to secure the health and safety of the community and, therefore, constitute a proper exercise of police power. (See *City of*

*Chicago v. Chicago & North Western Ry. Co.* (1954), 4 Ill. 2d 307, 317, 122 N.E.2d 553, 558.) The ordinance is basically designed to ensure that the sewer system works properly and, consequently, that the health of city residents is protected. The bonding requirement imposed upon contractors working on the sewer line obviously is aimed at protecting public property. We cannot say that these provisions of Ordinance No. 1852, in the absence of any express or implied grant of authority to the City regarding supervision or control of an individual's tap-in to the new sewer system, are relevant to a determination as to who is in charge of such work under section 9 of the Act.

We are aware of no cases which would justify the imposition of liability under the Act simply because a municipality has adopted an ordinance which protects the health and welfare of its citizens. While governmental entities may be liable under the Act (see, *e.g., Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.; Gall v. Metropolitan Sanitary District* (1982), 109 Ill. App. 3d 502, 440 N.E.2d 973), we find no authority for the proposition that a governmental unit may be liable under the Act merely because it has enacted laws designed to promote the health of its citizens; we conclude that the fact that it has done so will not, without more, provide a basis for determining who was in charge of the work for purposes of section 9 of the Act. To hold otherwise would, as the City points out, have the effect of making municipalities insurers of all structural work done pursuant to local health or safety ordinances regardless of the City's actual involvement with a particular construction project. Such expanded liability would contravene the statutory requirement that liability be imposed only upon those who are in charge of the work. (See *Hausam v. Victor Gruen & Associates* (1980), 86 Ill. App. 3d 1145, 1151, 408 N.E.2d 1051, 1056.) A municipality should not be held to be constructively in charge of work under the Act simply by virtue of the fact that that it has enacted laws which promote the health or safety of the community.

■ Having decided that liability cannot be premised upon Ordinance No. 1852, we turn to an examination of other factors which might indicate that the City was in charge of the work. We find virtually none. The City had no contractual involvement regarding the excavation where plaintiff's injury occurred. The City had no supervision or control of the work and retained no right to supervise or control, it had no representative continuously on the jobsite, there were no subcontractors to supervise or coordinate, the City undertook no responsibility for taking safety precautions, there was no evidence that the City had the authority to issue change orders, and the City

provided no materials or equipment for the project. Furthermore, there is no showing that the City was in a position to assure worker safety. Indeed, the testimony of Mr. Garner established that no city officials had knowledge of the cave-ins which occurred prior to the one which caused plaintiff's injuries. It was Mr. Garner who, having notice of potentially dangerous conditions, should have acted to provide for worker safety.

■ Plaintiff urges that the evidence raises an issue of fact as to whether the City was in charge of the work under the Act. In this regard, plaintiff relies on Mr. Garner's statement that the City had on three prior occasions stopped him from working until he had paid for repairs done to city property and that it was his impression that he worked at the pleasure of the City. Further reliance is placed on the testimony that there was a city sewer coordinator and building inspector at the excavation site the day of the injury. We are not persuaded by this argument of plaintiff. The contractor's statement regarding his feeling that he worked at the pleasure of the City is both ambiguous and of questionable relevance. The fact that two city representatives were at the excavation at the time plaintiff was injured was a fortuitous circumstance which was not related to the City's alleged control or supervision of the project. The city representatives were at the jobsite merely for inspection purposes. The evidence established that Mr. Jackstadt, the city sewer coordinator, was at the excavation solely to determine whether the tap-in to the main sewer line was correctly made, not to supervise or control the manner in which the tap-in was accomplished. The only factor which debatably allows an inference that the City was in charge of the work was the fact that the City could prevent the contractor from working. However, this alone is not enough to establish that the City was in charge of the work. *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 490, 394 N.E.2d 403, 407; *McGovern v. Standish* (1976), 65 Ill. 2d 54, 68, 357 N.E.2d 1134, 1141.

Although we have discovered no comparable cases involving a city, we find the liability which plaintiff seeks to impose upon the City to be analogous to those cases where an action under the Act has been brought against an architect. In such cases, courts have refused to impose liability where the architect's right to supervise and inspect was simply a duty to see that certain plans and specifications were met (*McGovern v. Standish* (1976), 65 Ill. 2d 54, 69, 357 N.E.2d 1134, 1142), and where the architect had no continuous jobsite representative and his representative's visits to the jobsite had no connection with construction safety considerations. (See *Hausam v. Victor Gruen*

& *Associates; Diomar v. Landmark Associates* (1980), 81 Ill. App. 3d 1135, 401 N.E.2d 1287; *Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 398 N.E.2d 60.) As in these cases concerning an architect's liability, we find the evidence in the case at bar insufficient to warrant the imposition of liability upon the City.

■■ From our review of the record before us, we conclude that the City's relationship to the construction work in this case was minimal and that under the *Pedrick* test, the trial court erred in refusing to direct a verdict for the defendants. In view of our decision, we need not consider the City's alternative contention that the excavation was not a structure within the purview of the Act.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed and judgment is entered in favor of both defendants and against plaintiff.

Reversed.

HARRISON, P.J., and JONES, J., concur.