**Donald P. LULICH, Plaintiff–Appellant,**

v.

**The SHERWIN–WILLIAMS COMPANY, a Corporation, Defendant–Appellee.**

**No. 92–2380.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1993.

Decided April 30, 1993.

Richard L. Rumsey, Anesi, Ozmon & Rodin, Chicago, IL (argued), for plaintiff-appellant.

Raymond H. Groble, III, William D. Serritella (argued), Ross & Hardies, Chicago, IL, for defendant-appellee.

Before BAUER, Chief Judge, CUDAHY, and POSNER, Circuit Judges.

BAUER, Chief Judge.

Donald Lulich asks this court to reverse an order of the district court granting summary judgment in favor of The Sherwin–Williams Company ("SWC"). Because we conclude that genuine issues of material fact exist, we reverse the district court judgment and remand for further proceedings.

## I.

In May of 1987, SWC signed a contract with Fred P. Berglund & Sons, Inc. ("Berglund") which provided for the construction of a boiler house at SWC's industrial facility, a twenty-acre parcel of land housing several SWC buildings. SWC retained Berglund and two other subcontractors[1] to construct the boiler house according to plans drafted and designed by SWC's Design Department. To oversee and coordinate the construction project, SWC employed George Martin, a division engineer with more than thirty years experience in the supervision of construction projects. Martin's duties included the "oversight of project design, determination of whether construction was carried out according to specifications, verif[ication of] the completion of work phases, and [the] ... approv[al] of interim payments to contractors." *Lulich v. The Sherwin–Williams Company*, 792 F.Supp. 1106 (N.D.Ill.1992) (unpublished order). SWC also employed Walter Golat as the maintenance superintendent. Golat inspected the entire industrial facility including the boiler house construction site on a daily basis. Golat's duties typically included the disconnection of utilities during construction and the approval and oversight of work involving high heat because of the presence of volatile, heat-sensitive chemicals at the facility.

To supervise the boiler house construction site, Berglund employed Dave Kordeck as the boiler house project superintendent. Kordeck managed the entire boiler house project and ensured that construction proceeded according to schedule. In addition, Berglund appointed a project manager, Norman Berglund, to address any problems that might arise during construction. Berglund also assigned a carpenter, Donald Lulich, to the boiler house project. Lulich's assignment required that he use a scissors-lift[2] as a support to mark plumb lines on the ceiling of a SWC building. The scissors-lift was located three feet away from an unbarricaded and unprotected six-inch deep trench. On May 21, 1987, while operating the scissors-lift at the boiler house site, Lulich suffered physical injuries when the lift fell into the adjacent trench and rolled onto its side.

Lulich subsequently sued SWC in state court alleging both a violation of the Illinois Structural Work Act, 740 ILCS 150/9 (1992) (formerly Ill.Rev.Stat. ch. 48, para. 69) (the "Act"),[3] and common law negligence. Pursuant to 28 U.S.C. § 1441(a), SWC removed the case to the United States District Court for the Northern District of Illinois based on diversity jurisdiction. Shortly thereafter, SWC filed a motion for summary judgment, asserting that SWC did not "hav[e] charge" of the work as required by the Act and further that it did not maintain sufficient control over the work to subject itself to liability for the alleged negligence. The district court agreed with SWC and entered judgment accordingly. Lulich appeals.

---

1. SWC hired Antarctic Mechanical Services and Durkin Electrical Company to assist with the construction of the boiler house.

2. The scissors-lift is a "mechanical contrivance" covered by the Illinois Structural Work Act, 740 ILCS 150/1 (1992).

3. Section one of the Act provides in relevant part:

   All scaffolds, ... supports or other mechanical contrivances, erected or constructed by any person, firm or corporation in this state for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected or constructed in a safe, suitable and proper manner. ...

   Ill.Rev.Stat. ch. 48, para. 60. Section nine of the Act prescribes the private cause of action:

   Any owner, contractor, sub-contractor, foreman or other person *having charge* of the erection, construction ... of any building ... within the provisions of this act, shall comply with all the terms thereof. ... For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby.

   *Id.* at para. 69 (emphasis added).

## II.

We review *de novo* a district court order granting summary judgment; that is, we determine anew whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). We draw all inferences in favor of the nonmoving party. *Id.* In the present case, Lulich argues that issues of material fact, pertaining to both the negligence and the Structural Work Act claims, exist with regard to SWC's control over the construction of the boiler house. We agree.

### A. The Illinois Structural Work Act Claim

In order to establish liability under the Illinois Structural Work Act, a plaintiff must demonstrate that the defendant had charge of either the overall construction work or the specific project which caused plaintiff's injuries. *Fisher v. Crippen*, 144 Ill.App.3d 239, 98 Ill.Dec. 183, 493 N.E.2d 1204, 1206 (1986), *cited in, Savic v. United States*, 918 F.2d 696, 699 (7th Cir.1990). Whether the defendant "had charge" of the work or worksite is typically a question for the jury. *Burger v. Prairie Development, Ltd.*, 218 Ill.App.3d 814, 161 Ill.Dec. 467, 578 N.E.2d 1113, 1115 (1st Dist.1991); *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Railway Co.*, 22 Ill.2d 305, 175 N.E.2d 785, 787 (1961).

Illinois courts balance multiple factors when deciding whether a defendant "had charge" of work or a worksite. *Fitzpatrick v. Perry Drugs Co.*, 213 Ill.App.3d 529, 157 Ill.Dec. 639, 572 N.E.2d 1103, 1105 (1st Dist. 1991). These factors include, but are not limited to, whether the owner:

(1) supervised and controlled the work; (2) retained the right to supervise and control the work; (3) constantly participated in the ongoing activities at the construction site; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the jobsite; (6) had authority to issue change orders; (7) had the right to stop the work; (8) owned the equipment at the work site; (9) was familiar with construction customs and practices; and, (10) was in a position to insure worker safety or alleviate equipment deficiencies or improper work habits.

*Id.; accord Chance v. City of Collinsville*, 112 Ill.App.3d 6, 67 Ill.Dec. 747, 445 N.E.2d 39, 42 (1983). Significantly, Illinois courts have found that a company's retained authority to stop or control work to ensure worker safety alone is sufficient to constitute "having charge." *Kjellesvik v. Commonwealth Edison Co.*, 73 Ill.App.3d 773, 29 Ill.Dec. 559, 392 N.E.2d 116, 120 (1st Dist.1979) (citing *Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 211 N.E.2d 247, 252 (1965)).

We find that Lulich presented enough evidence of SWC's control over the project to raise a genuine issue of material fact with respect to whether SWC "had charge" of the boiler house construction project. The record indicates that SWC hired three independent subcontractors, including Berglund, to work on the boiler house project. (R. 86 Ex. A at 1.) This fact, viewed in a light most favorable to Lulich, raises an issue concerning SWC's coordination and control of the various subcontractors. Furthermore, SWC maintained a constant presence at the worksite. The record reveals that both Walter Golat and George Martin, employees of SWC, visited the boiler house worksite on a daily basis. In addition, Golat stated that George Martin, an engineer familiar with construction industry customs and practices, had authority to stop the work if conditions were dangerous or unsafe. (Dep. 1, Doc. 2 at 58.) The record also indicates that SWC provided its own equipment to Berglund to assist with the boiler house construction. (Dep. 2 at 50, 82–83.) This assistance further advances Lulich's claim that SWC controlled or "had charge" of the work project.

Finally, Lulich bases several arguments regarding SWC's control of the worksite on a document referred to as "The Sherwin–Williams Company—Regulations for Contractors", which arguably applied to Berglund through a contract document known as "PD–24". These regulations provide that SWC's safety department would monitor the worksite and would stop construction if housekeeping barricades were not erected or

**722**

if the site was otherwise unsafe.[4] Although the parties dispute the relevance and applicability of the above-referenced regulations, we conclude that the existence of these provisions and their potential application to Berglund under "PD–24"[5] raise a significant issue of material fact with respect to SWC's control of the work and worksite. These regulations place the extent of SWC's control over the worksite in issue, making summary judgment on the Structural Work Act claim inappropriate.

**B.** *The Negligence Claim*

 These facts also indicate that a genuine issue of material fact exists with respect to the negligence claim. Illinois has adopted the text and comments to section 414 of the Restatement of Torts, *Payne v. City of Elwood*, 957 F.2d 517, 520 (7th Cir.1992), which provides in relevant part:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965). More specifically, Comment c to section 414 provides that "the employer must have retained at least some degree of control over the manner in which the work is done." *Id.* at cmt c. Our review of the record indicates that a genuine issue of material fact exists with respect to the amount of control SWC retained over the boiler house construction project. Consequently, the district court's order granting summary judgment to SWC on Lulich's claim of negligence is in error and requires reversal.

We emphasize, however, that our ruling does not address the merits of Lulich's negligence and Structural Work Act claims; those

questions must be resolved by the jury on remand. We hold only that, given the facts presented to the district court, a question of material fact exists with respect to SWC's control over the boiler house project and worksite.

### III.

For the foregoing reasons, the judgment of the district court is REVERSED and the matter REMANDED for further proceedings consistent with this opinion.

---

4. Lulich, in his deposition testimony, asserted that SWC employee "Bill", when questioned at the worksite, directed Lulich not to cover the trench. (Dep. 2 at 87–88, 91.) "Bill" also informed Berglund that a safeway scaffold should be used to ensure safety. *Id.* at 49.

5. SWC argues that "PD–24" did not apply to the boiler house project because "PD–24" was superseded by the all-inclusive boiler house project contract. Nevertheless, because "PD–24" applies to Berglund employees generally, and because the issue of applicability has not been resolved, we conclude that this is an issue of fact that warrants resolution by a jury.