**Slavoljub DAMNJANOVIC and Seretena Damnjanovic, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 92–3008.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1993.

Decided Nov. 19, 1993.

Edward L. Osowski (argued), Chicago, IL for plaintiffs-appellants.

Sharon J. Coleman, Asst. U.S. Atty., Daniel E. May (argued), Office of the U.S. Atty., Civ. Div., Appellate Section, Linda A. Wawzenski, Office of the U.S. Atty., Chicago, IL, for defendant-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Slavoljub Damnjanovic brought this action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1988) (FTCA), for claims arising under the Illinois Structural Work Act and common-law negligence. The district court granted summary judgment against both of his claims on the ground that the government did not "have charge of" the work. Because we find that there are genuine issues of material fact, we reverse and remand.

## I.

Kovilic Construction Company (Kovilic) entered into a contract with the United States Army in August, 1985, to strip and re-roof a number of buildings at Fort Sheridan, Illinois. Kovilic used a belt and rope system for safety purposes when working on the roofs at Fort Sheridan. On April 16, 1986, however, Slavoljub Damnjanovic, a Kovilic employee, was shingling the roof of Building 99 without a safety belt. While stepping backwards to observe his work, Damnjanovic fell from the roof and sustained serious injuries.

Damnjanovic subsequently brought this FTCA suit against the United States, alleging a claim under the Illinois Structural Work Act, 740 ILCS 150/9 (1992) (Act), and commonlaw negligence. The government filed a motion for summary judgment arguing that it did not "have charge of" the work as required by the Act and likewise did not have sufficient control of the work site to create a duty and to subject it to liability under the common law.

On July 23, 1992, the district court granted summary judgment for the government. The court found that the contract between Kovilic and the government expressly assigned all responsibility for accident prevention and safety precautions to Kovilic and that the government had limited authority to control Kovilic's employees and had little day-to-day supervision of the work. The court held that, although the government had authority to issue change orders and could stop the work after notifying Kovilic of deficiencies in materials or workmanship, these two factors were insufficient to show that the government "had charge" under the totality of the circumstances. Finally, the court concluded that the fact that the government did not have charge for purposes of the Act also disposed of the negligence claim.

## II.

■ We review the grant of summary judgment *de novo*. Taking all facts and inferences in favor of the non-moving party, the question is whether a genuine issue of material fact exists to preclude judgment as a matter of law for the moving party. *Lulich v. Sherwin–Williams Co.*, 992 F.2d 719, 721 (7th Cir.1993).

Under the FTCA, "[t]he United State shall be liable ... in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The substantive law to be applied is that of the State of Illinois, "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

### A. *Structural Work Act Claim*

The Illinois Structural Work Act regulates the use of scaffolds, hoists and other contrivances used in construction projects.[1] It also provides a private right of action for persons injured as a result of violations of its provisions.[2] The primary purpose of the Act is to encourage safe construction practices in order to prevent injury to those employed in extrahazardous occupations, and the Act has been liberally construed to effectuate its protective and compensatory purposes. *Harvel v. City of Johnston City*, 146 Ill.2d 277, 282–86, 586 N.E.2d 1217, 1220–21 (1992).

---

1. Section 1 of the Act provides, in pertinent part:
   All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected or constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon.

   740 ILCS 150/1.

2. Section 9 of the Act provides, in pertinent part:
   Any owner, contractor, sub-contractor, foreman or other person *having charge of* the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof.... For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby....
   740 ILCS 150/9 (emphasis added).

■ In order to establish liability under the Act, a plaintiff must show, among other things, that the defendant "had charge of" either the work overall or the specific project which caused the plaintiff's injuries. *Cutuk v. Hayes/Gallardo, Inc.,* 151 Ill.2d 314, 320, 176 Ill.Dec. 888, 891, 602 N.E.2d 834, 837 (1992). As to this phrase, the Illinois Supreme Court has stated:

> "The term 'having charge of' is a generic term of broad import, and although it may include supervision or control, it is not confined to it. As was said of the word 'charge' in *People v. Gould,* 345 Ill. 288, 323[, 178 N.E. 133, 148 (1931) ]: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure."

*Emberton v. State Farm Mut. Auto. Ins. Co.,* 71 Ill.2d 111, 117, 373 N.E.2d 1348, 1350 (1978) (quoting *Larson v. Commonwealth Edison Co.,* 33 Ill.2d 316, 321, 211 N.E.2d 247, 251 (1965)).

■ Although the determination whether a party has charge of the work for purposes of the Act has been described as the "ultimate factual question," *Isabelli v. Cowles Chemical Co.,* 7 Ill.App.3d 888, 896, 289 N.E.2d 12, 18 (1st Dist.1972), summary judgment on this ground is appropriate if there is no genuine issue of material fact. *Cutuk,* 602 N.E.2d at 837. The Illinois courts have identified ten factors to be considered in determining whether a defendant is in charge under the Act: (1) supervision and control of the work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the job site; (6) authority to issue change orders; (7) the right to stop the work; (8) ownership of the equipment used at the job site; (9) the defendant's familiarity with construction customs and practice; and (10) whether the defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. *Payne v. Village of Elwood,* 957 F.2d 517, 519 (7th Cir.1992) (citing *Chance v. City of Collinsville,* 112 Ill.App.3d 6, 10, 445 N.E.2d 39, 42 (5th Dist.1983)). Summary judgment may be granted even if some of the factors weigh against the defendant. *Burger v. Prairie Dev., Ltd.,* 218 Ill. App.3d 814, 826, 578 N.E.2d 1113, 1120 (1st Dist.1991).

Of these factors, particular emphasis is placed on those related to job safety. *Id.* Indeed, in *Lulich v. Sherwin–Williams,* our most recent case addressing this issue, we held that "Illinois courts have found that a company's retained authority to stop or control work to ensure worker safety alone is sufficient to constitute 'having charge.' " 992 F.2d at 721 (citing *Kjellesvik v. Commonwealth Edison Co.,* 73 Ill.App.3d 773, 777, 392 N.E.2d 116, 120 (1st Dist.1979) and *Larson,* 211 N.E.2d at 252). *See also Cockrum v. Kajima Int'l, Inc.,* 243 Ill.App.3d 402, 412–13, 610 N.E.2d 1373, 1380 (4th Dist.1993) (" '[o]ne possessing the right to stop the work if it is being done in a dangerous manner is a person "having charge" within the meaning of the Act' ") (quoting *Scrimager v. Cabot Corp.,* 23 Ill.App.3d 193, 195, 318 N.E.2d 521, 523 (4th Dist.1974)). At a minimum, evidence that the defendant had the authority to stop the work for safety reasons is enough to present a genuine issue of fact whether the defendant "had charge of" the work site. In

*Lulich,* the district court granted summary judgment for the defendant on the ground that the defendant did not "have charge of" the work. We reversed, however, because we concluded that there was a genuine issue of fact as to this matter. Reviewing the record, we found evidence suggesting that the defendant's safety department would monitor the work site and had the authority to stop construction if the site was unsafe. *Id.* at 721–22. Given this evidence, we concluded that summary judgment was inappropriate.

■ With respect to the narrow question whether the government "had charge of" the construction site, we find *Lulich* controlling and conclude that Damnjanovic presented enough evidence to create a genuine issue of fact to preclude summary judgment. As in *Lulich,* the government maintained a constant presence at the work site, with a government representative making routine and substantive inspections of the work and of the manner in which it was being performed. In addition, although the contracting officer, the chief contract administrator for the government, acknowledged that he knew nothing of the construction business, he stated, "That's why we have technical experts, a COR [contracting officer representative], our

architects, and engineers knowledgeable in construction."

Finally, the contract between Kovilic and the government, as well as the surrounding circumstances and the role the government in fact assumed, indicate that the government took responsibility for safety precautions on the job site and, most significantly in our view, given *Lulich,* that the government had authority to stop the work for safety purposes. The contract between the government and Kovilic incorporates by reference certain Federal Acquisition Regulations. One of these regulations, 48 C.F.R. § 52.236–13, deals specifically with accident prevention.[3] Under this provision, Kovilic is made responsible for the protection of the lives and health of its employees and is obligated to comply with specific safety standards. For example, subsection (a)(2) of the regulation obliges Kovilic to comply with 29 CFR Parts 1926 & 1910. Section 1926.451(u) mandates that a catch platform be installed below the working area of roofs more than sixteen feet from the ground,[4] unless the workers wear safety belts attached to lifelines. Further, subsection (b) requires Kovilic to comply with all pertinent provisions of the U.S. Army Corps of Engineers Safety and Health Requirements Manual, which entails specific

---

3. That provision provides:

ACCIDENT PREVENTION (APR 1984)

(a) In performing this contract, the Contractor shall provide for protecting the lives and health of employees and other persons; preventing damage to property, materials, supplies, and equipment; and avoiding work interruptions. For these purposes, the Contractor shall—

(1) Provide appropriate safety barricades, signs, and signal lights;

(2) Comply with the standards issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Part 1910; and

(3) Ensure that any additional measures the Contracting Officer determines to be reasonably necessary for this purpose are taken.

(b) If this contract is with any Department of Defense agency or component, the Contractor shall comply with all pertinent provisions of the U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385–1–1, dated April 1981.

(c) The Contractor shall maintain an accurate record of exposure data on all accidents incident to work performed under this contract resulting in death, traumatic injury, occupa-

tional disease, or damage to property, materials, supplies, or equipment. The Contractor shall report this data in the manner prescribed by the Contracting Officer.

(d) The Contracting Officer shall notify the Contractor of any noncompliance with these requirements and of the corrective action required. This notice, when delivered to the Contractor or the Contractor's representative at the site of the work, shall be deemed sufficient notice of the noncompliance and corrective action required. After receiving the notice, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to take corrective action promptly, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken. The Contractor shall not base any claim or request for equitable adjustment for additional time or money on any stop order issued under these circumstances.

(e) The Contractor shall be responsible for its subcontractors' compliance with this clause.

4. The roof from which Damnjanovic fell was seventeen to eighteen feet above the ground.

safety precautions and generally mandates a work environment free of recognized safety hazards.

██ The district court relied heavily on 48 C.F.R. § 52.236–13 and its assignment of responsibility to Kovilic in its decision that the government did not have charge of the work. It is well-recognized, however, that more than one entity may be deemed "in charge" under the Act. *Mahoney v. 223 Assocs.*, 245 Ill.App.3d 562, 565, 614 N.E.2d 249, 251 (1st Dist.1993). Although this section puts the brunt of responsibility on the contractor to ensure a safe environment, under subsection (d) of the provision, the contracting officer has authority to ensure compliance with the mandated safety standards. Additionally, subsection (a)(3) provides that the contractor should implement any additional safety measures determined to be reasonably necessary by the contracting officer.

██ Whether a party has charge of the work, moreover, is not limited to an inquiry into one's contractual obligations and contractual authority, but, given the broad protective purposes of the Act, also depends upon the surrounding circumstances and the role the party assumed on the work site. *Burger*, 578 N.E.2d at 1119 (quoting *Fruzyna v. Walter C. Carlson Assoc. Inc.*, 78 Ill. App.3d 1050, 1053, 398 N.E.2d 60, 63 (1st Dist.1979)). In the present case, the contracting officer and the contracting officer representative not only acknowledged their authority to stop work for safety purposes, but actually exercised that authority. The contracting officer, William August, confirmed that he could reject use of unsafe equipment by the contractor and stated, "I can stop [work] because they don't speak English if I wanted to. I can stop the contract, yes, for any reason." The contracting officer representative, James LaVigne, also acknowledged that the contracting officer in fact has the authority to change the manner and method of the work if it is unsafe. La-Vigne stated that, although he, as the contracting officer representative, could stop the work for immediate hazards to health or

safety, August, the contracting officer, could stop the work if there were hazards to health and safety that were not immediate. La-Vigne also agreed that the government would not allow a contractor to conduct its operations in whatever haphazard and unsafe fashion it wanted.

The government in fact exercised this authority to stop the work for safety purposes when it discovered employees removing asbestos in an unsafe manner. In early April, 1986, LaVigne conducted an inspection of the job site and discovered that the workers were not removing asbestos shingles properly. The workers were not wetting down the roof and were not using chutes to dispose of the shingles in a way that minimized the amount of asbestos dust. LaVigne also noted that the workers were not wearing their respirators. LaVigne reported the incident to August, who notified Kovilic in a letter dated April 7, 1986, of the unsafe condition. August modified the contract so that the work would be conducted only on Sundays in the presence of the contracting officer representative.

When the workers resumed working about a week later, LaVigne witnessed some of them scraping asbestos shingles off the roof and throwing them into a dumpster. Moreover, the workers were wearing paper respirators and kept the proper respirators hanging around their necks. LaVigne told them to wear the proper respirators or stop working, at which time they put on their respirators. At approximately 1:30 p.m., LaVigne again discovered the workers throwing the shingles into the dumpster and noted that one of the workers was not wearing his respirator. LaVigne told them to stop throwing shingles and not to remove any more. About 4:00 p.m., LaVigne saw the workers once again removing the asbestos shingles. He then told the workers to get off the roof or he was going to get the Military Police to take them off. They stopped working and did not remove any more shingles.[5]

---

5. During this inspection and others, LaVigne does not recall any of the workers wearing safety

lines or using other such safety devices.

LaVigne's report was forwarded to August. On April 15—one day before the accident at issue—August sent a letter to Kovilic notifying him of the safety violations and threatening to terminate the contract if the violations were not remedied.

Prior to oral argument, we referred counsel to our recent decision in *Lulich* so that counsel could address the significance of that holding to the present case. At argument, the government failed to distinguish our holding in *Lulich* but instead relied, as did the district court, on *Savic v. United States,* 918 F.2d 696 (7th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 38 (1991). *Savic* involved a suit brought by a Kovilic employee who fell from a ladder while working at the Great Lakes Naval Training Station in Great Lakes, Illinois. The contract between the Navy and Kovilic was essentially identical to that involved here. After a bench trial, the district court entered judgment in favor of Savic. On appeal, however, we reversed. We concluded that, among other things, the government did not have charge of the project under the totality of the applicable factors.

*Savic,* no doubt, bears considerable resemblance to the present case. Nonetheless, we think that this case is controlled by our more recent decision in *Lulich. Savic* came to us after a bench trial where the parties had an opportunity to fully explore the question at issue. The present case, however, comes before us on summary judgment. To be sure, the issue in both cases is the same: Whether the defendant is entitled to judgment because the government did not "have charge of" the work. Yet judgment prior to trial on the ground that the defendant did not have charge—the "ultimate factual question"—is difficult to sustain given the preliminary posture of the case. In reviewing the findings of the district court as trier of fact, on the other hand, we can consider the court's conclusions with the benefit of a full and complete record. Therefore, we can better assess whether sufficient evidence supports a finding as to having charge.

Further, we noted in *Savic* that there was no evidence that the government had the authority to stop the work for safety purposes. *Savic,* 918 F.2d at 702, 704.[6] In the present case, not only did the contracting officer and his representative acknowledge their authority to stop the work for safety purposes, but LaVigne even exercised that authority when he told the employees to wear their respirators or stop working. This case falls squarely within the holding of *Lulich.*

Finally, the approach in *Savic,* finding that only three of the ten *Chance* factors tilted toward liability, seems more mechanical than the analysis pursued in the leading Illinois cases. In *Savic,* we said:

> The United States argues, and we agree, that only three of the ten factors from *Chance* would support a finding that it was "in charge of" the work being performed by Kovilic: the authority to issue change orders, the right to stop work (*only when it does not comply with contract specifications*), and familiarity with construction customs and practices; the other seven factors applied to Kovilic. Thus, under the totality of the factors from *Chance,* we firmly believe that the United States was not "in charge of" Kovilic's roofing project, for purposes of the Structural Work Act.

*Id.* at 702 (emphasis in original). This scoring of factors seems to be in tension with Illinois cases looking at these factors under the totality of the circumstances. *See, e.g., Fitzpatrick v. Perry Drugs Co.,* 213 Ill. App.3d 529, 534, 572 N.E.2d 1103, 1107 (1st Dist.1991) (noting that presence of only three factors, including the power to stop work, presented a factual question whether defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits). Our language also seems to imply that only one defendant— either Kovilic or the government—was in charge of the work site. Such a view is not supported by the Illinois cases, which hold that one or more parties may be in charge of the work and thus be liable to an injured worker. *See, e.g., id.* 572 N.E.2d at 1105.

---

**6.** There are portions of the opinion, however, which suggest that the government could stop work for safety reasons. *See Savic,* 918 F.2d at 697, 703.

We conclude that, as in *Lulich*, the record presents a genuine factual issue whether the government "had charge of" the work, making summary judgment on this claim inappropriate.[7]

## B. *Common Law Negligence*

■ Plaintiff also contends that summary judgment should not have been granted on the common law negligence claim. Damnjanovic argued that the government was negligent for not exercising its control over the independent contractor pursuant to § 414 of the *Restatement (Second) of Torts* (1965), which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

In particular, comment c of that section provides:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

This section and commentary have been recognized as expressing the law of Illinois. *Gentile v. Kehe*, 165 Ill.App.3d 802, 520 N.E.2d 827 (1st Dist.1987), *appeal denied*, 121 Ill.2d 569, 526 N.E.2d 830 (1988). We think that the evidence supporting the fact that the government "had charge of" the operations also supports the assertion, for purposes of summary judgment, that the government retained supervision and control with respect to Damnjanovic's negligence claim. Accordingly, we reverse the district court's grant of summary judgment on this claim, as well.

## III.

For the foregoing reasons, the judgment of the district court is REVERSED and the matter REMANDED for further proceedings consistent with this opinion.

RIPPLE, Circuit Judge, dissenting.

The court's decision today creates an unacceptable level of ambiguity in the law of the circuit with respect to cases under the Illinois Structural Work Act. It also creates an intolerable ambiguity with respect to the application of the Structural Work Act in cases brought under the Federal Tort Claims Act.

The prior decisions in *Savic v. United States*, 918 F.2d 696 (7th Cir.1990), and *Lulich v. Sherwin–Williams Co.*, 992 F.2d 719 (7th Cir.1993), cannot live in analytical peace. The court follows *Lulich* but leaves *Savic* in place, while disparaging it as "mechanical." If there is any principled and practical difference between *Lulich* and *Savic*, it lies not in the different procedural postures of the two cases, but in the fact that *Savic* involved a federal governmental contractual relationship. This case, like *Savic*, but unlike *Lulich*, involves this unique relationship of the

---

7. The dissent suggests that we assign greater weight to *Savic* since both *Savic* and the case before us involve "the unique relationship of the United States government to its contractors." Dissent at 1277. Neither party here argues, however, that the existence of such a relationship militates either in favor of or against liability. Indeed, the only time that the parties allude to anything resembling a "unique relationship" is when the appellants discuss the discretionary function exception to the Federal Tort Claims

Act. Appellants Reply Br. at 8–12. This exception is clearly inapplicable here. Moreover, in describing the extent of government liability intended by the FTCA, Congress stated that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, *in the same manner and to the same extent as a private individual under like circumstances.*" 28 U.S.C. § 2674 (1993) (emphasis added). This principle seems to be in tension with a "unique relationship" analysis.

United States government to its contractors. My colleagues apparently do not believe this similarity to be a matter of much consequence.[1]

I respectfully submit that this case ought to be set for argument before the entire court. The analytical tension between *Lulich* and *Savic* must be resolved before it creates needless work for our colleagues in the district courts of the circuit. If the unique relationship of the government to its contractors justifies a different approach than the one usually employed in other Structural Work Act cases, that issue should also be decided in a manner that will provide sufficient guidance to both the courts and the litigants of the circuit.

I would set this case for hearing en banc.

---

1. The Federal Tort Claims Act requires, as the majority points out, that the "United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1988). Consequently, the federal government will be liable to the same extent as a private contractor that exercises the requisite degree of control over the job site. However, in determining whether that requisite degree of control exists, the differences in the relationships formed by governmental and nongovernmental contracts must be taken into account. I respectfully suggest that, *if* the two precedents before us can be distinguished, this basis is a more principled one than the one offered by the majority.