Eddie D. CHURCH and Cherri Church,
Plaintiffs–Appellants,

v.

GENERAL MOTORS CORP.,
Defendant–Appellee.

No. 93–2967.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1994.

Decided Aug. 26, 1994.

Curt N. Rodin (argued), Christopher J. Dallavo, Anesi, Ozmon & Rodin, Chicago, IL, for plaintiffs-appellants.

Roderick A. Palmore (argued), Ian Abram Schwartz, Sonnenschein, Nath & Rosenthal, Brian W. Lewis, David M. Simon, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendant-appellee.

Before FLAUM and EASTERBROOK, Circuit Judges, and MILLER, District Judge.*

FLAUM, Circuit Judge.

Seeking recovery for personal injuries, Eddie and Cherri Church filed suit in Illinois against General Motors Corporation ("GM") under both the Illinois Structural Work Act ("Work Act"), 740 ILCS 150 (1992), and common law negligence. GM removed this suit to federal court and moved for summary judgment which the court granted. We affirm.

## I. Background

GM sold its Willow Springs, Illinois, production plant in March 1989, and had until year-end to clear-out its equipment, including ten overhead cranes known in the business as "fishbellies." The fishbelly stretches horizontally above the factory floor between two parallel rails as if to form a large capital letter "H." It has a "fish-belly" shape—a girder that bows to a greater depth in the middle than the ends. Both ends of the crane are bolted to a set of locomotive-type wheels (known as end-trucks) which roll on top of the rails allowing the crane to glide back and forth high above the factory. With attached pulleys and hoists, a fishbelly may be used to transport heavy objects.

To expedite the removal of the fishbellies GM hired Power Press Sales, Inc. ("Power Press") to serve as an equipment liquidator. Power Press had sold GM's fish-bellies to American Metal Industries ("American"), who had in turn hired Schuette Crane Corporation ("Schuette") to remove the fishbellies from the plant. After settling separately with the plaintiffs Schuette conceded that it alone had charge of all the work, controlled how the equipment was to be removed, and decided on the tools and machinery to be used in the operation. Schuette removed fishbellies by using either one or two mobile construction cranes, which would lower the fishbelly to the ground where it could be cribbed to prevent it from rocking during disassembly.

To assist in dismantling the Willow Springs fishbellies Schuette employed a local union ironworker, Eddie Church. While using the one-crane method, and under the direction of Paul Christenson, Schuette's foreman, Church suffered some very serious injuries. Church crawled under one end of the fishbelly to remove the bolts attaching the end-truck to the girder's butt. Without waiting for Church to return from underneath, some of his coworkers removed the end-truck on the opposite end of the fishbelly. With one end-truck still attached at Church's side, the fishbelly, seeking a new position of equilibrium, rocked toward Church crushing his body against the factory floor. Immediately upon learning of Church's accident, Ronald Craig, GM's UAW Health and Safety Representative, rushed to the scene. Arriving just after the fishbelly had been lifted off of Church, Craig instructed some Schuette employees to crib the fishbelly to prevent further rocking and then ordered Schuette to stop working. Other than Craig's actions immediately after

---

* The Honorable Robert L. Miller, Jr. of the Northern District of Indiana is sitting by designation.

Church's injury, no evidence exists that anyone else employed by GM ever directed in any way the safety of Schuette's dismantling operation.

Pursuant to both the Work Act and common law negligence, Eddie and Cherri Church filed suit on December 18, 1989, in the Circuit Court of Cook County against GM seeking recovery for the personal injuries sustained by Eddie and for the loss of consortium suffered by Cherri. On January 22, 1990, GM removed the action to federal court pursuant to 28 U.S.C. §§ 1441(a) and 1332(a)(1). On November 17, 1992 the district court granted summary judgment for GM, holding that no evidence existed to support either a claim under the Work Act or the common law. We affirm that judgment for the reasons stated below.

## II. Discussion

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if, when drawing all inferences in favor of the non-moving party, no genuine issue of material fact exists. *Damnjanovic v. United States,* 9 F.3d 1270, 1272 (7th Cir.1994). A party is entitled to summary judgment "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In asking us to overturn the district court's order the plaintiffs advance the following two arguments: (A) a genuine issue of material fact exists as to whether GM was "in charge" of the overall disassembly work within the meaning of the Illinois Structural Work Act, and (B) GM negligently violated their duty to provide Church with a safe place to work.

### A. Work Act

■ The Illinois Structural Work Act regulates the use of scaffolds, hoists, and other equipment used in construction projects and provides a private cause of action against violators. *See* 740 ILCS § 150/9 (1993). To establish liability under the Work Act a plaintiff must show that the defendant either had charge of the overall work or had charge of the specific project which caused

the plaintiff's injuries. *Damnjanovic,* 9 F.3d at 1273; *Lulich v. Sherwin–Williams Co.,* 992 F.2d 719, 721 (7th Cir.1993). While no all-encompassing test exists to determine whether a defendant was in charge of the work, *Burger v. Prairie Dev., Ltd.,* 218 Ill. App.3d 814, 820, 161 Ill.Dec. 467, 470, 578 N.E.2d 1113, 1116 (1st Dist.1991), the court should consider whether the defendant—

(1) supervised and controlled the work; (2) retained the right to supervise and control the work; (3) constantly participated in the ongoing activities at the construction site; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the job site; (6) had the authority to issue change orders; (7) had the right to stop the work; (8) owned the equipment at the work site; (9) was familiar with the construction customs and practices; and (10) was in a position to insure worker safety or alleviate equipment deficiencies or improper work habits.

*Damnjanovic,* 9 F.3d at 1273; *Lulich,* 992 F.2d at 721 (quoting *Fitzpatric v. Perry Drugs Co.,* 213 Ill.App.3d 529, 532, 157 Ill. Dec. 639, 641, 572 N.E.2d 1103, 1105 (1st Dist.1991)); *Chance v. City of Collinsville,* 112 Ill.App.3d 6, 11, 67 Ill.Dec. 747, 750, 445 N.E.2d 39, 42 (1983); *Burger,* 218 Ill.App.3d at 820, 161 Ill.Dec. at 470, 578 N.E.2d at 1116. The above "control factors" all focus on the "two hallmarks of being 'in charge': (1) actual or clearly implied control and supervision over the construction; and (2) responsibility for job safety." *Burger,* 218 Ill. App.3d at 820, 161 Ill.Dec. at 470, 578 N.E.2d at 1116. A defendant cannot be held liable for a construction job site injury unless the plaintiff shows that the defendant "had some *direct connection with the construction operations.*" *Id.* (citations omitted).

■ Although the plaintiffs strongly assert that GM had considerable control over the dismantling of the fishbellies, we are unable to find any alleged fact that if proved would support the plaintiff's case. As the district court observed:

GM personnel did not supervise the crane removal, did not discuss, direct, or instruct Schuette how to dismantle the cranes, and did not direct the blocking or rigging of

the cranes. No GM employee participated in the disassembly of the cranes, nor did GM furnish any of the equipment used during the dismantling process. GM's sole involvement consisted of instructing Schuette as to which cranes were to be removed and the timing of their removal. The uncontroverted facts indicate that GM did not own, supply, or even select any of the dismantling equipment; that the methodology for the dismantling work had been determined solely by Schuette; and that GM had never attempted to manage the safety of Schuette's work. Without some modicum of control, GM cannot be liable under the Work Act.

Notwithstanding the dearth of evidence, the plaintiffs assert that GM had overall control. For one, they reason that because the floor of the GM's plant had several large holes, Schuette was implicitly forced by GM to use the one-crane method which, the plaintiffs allege, is inherently unsafe. In reply, Christenson and Schuette's owner, Robert Schuette, testified that Schuette never compromised its safety standards and procedures in dismantling any of the fishbellies, even by using the one-crane method. Given this testimony the plaintiffs must present at least some rebuttal evidence before they may claim that a factual dispute exists to avoid summary judgment. They have not.

■ Perhaps the plaintiffs' strongest argument that GM controlled the fishbelly removal is the stipulated fact that GM twice ordered Schuette to cease work. The plaintiffs argue that somewhere in *Lulich* we held that the ability to stop work in Illinois is, in and of itself, sufficient to place a party "in charge" of the work. We disagree. The right to stop work, while an important factor, is relevant only to the extent that stoppage is ordered to regulate job site safety. *Burger*, 218 Ill. App.3d at 824–25, 161 Ill.Dec. at 473, 578 N.E.2d at 1119. *See Lulich*, 992 F.2d at 721 ("[A] company's retained authority to stop or control work *to ensure worker safety* alone is sufficient to constitute 'having charge.'") (emphasis supplied); *see also Damnjanovic*, 9 F.3d at 1273 (stating that "a company's retained authority to stop or control work *to ensure worker safety* alone is sufficient to

constitute 'having charge.'") (emphasis supplied).

■ In *Lulich* the defendant directly employed a division engineer specifically to oversee and coordinate the safety of the construction project, with the "authority to stop the work if conditions were dangerous or unsafe." 992 F.2d at 721. In *Damnjanovic* the defendant had maintained a constant presence at the work site with its representatives making routine safety inspections of the site and stopping the work on a number of occasions for safety violations. 9 F.3d at 1275. In contrast to *Lulich* and *Damnjanovic*, GM had no right to oversee and stop Schuette's work because of unsafe practices towards Schuette's workers, nor did GM act as if it had any such rights. GM only stopped Schuette on two occasions—(1) when Schuette began dismantling the wrong crane, and (2) immediately after the accident. GM's first order to stop work was unrelated to safety and thus not pertinent. As to the second stoppage, the plaintiffs' believe that GM demonstrated its control by stopping the work after Church's emergency. We must disagree. An individual's spontaneous response to a human disaster, without more, gives no indication that the individual's employer maintained control over project safety. *See Savic v. United States*, 918 F.2d 696, 703 (7th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 38 (1991) (holding that defendant was not in charge in spite of its inspectors' testimony "that they would only become involved with the work of the individual laborers when and if they observed immediate danger to 'life and limb,' where someone could get hurt"). Therefore, as the plaintiffs lack any other evidence that GM actually did or had any right to supervise, inspect, manage, direct, or otherwise "control" the safety of any part of the fishbelly dismantling project we must affirm the decision of the district court. Without a genuine issue of material fact, GM was entitled to a judgment as a matter of law on the plaintiffs' claims under the Illinois Structural Workers Act.

## B. Negligence

■ In their efforts to overturn the district court's summary judgment order, the

plaintiffs argue that GM negligently violated an alleged duty to provide Church with a safe place in which to work. Although the elements of liability under the Work Act differ somewhat from the common law of negligence, a plaintiff who charges that a defendant has negligently failed to inspect, operate, manage, maintain, control and supervise a job site also has the burden of showing, *inter alia*, that the defendant was "in charge" of the work. *See Stifle v. Marathon Petroleum Co.*, 876 F.2d 552, 555–56 (7th Cir.1989) (opining that the Work Act "amounts to a typical negligence theory. Consequently, liability under the act will be occasioned when a party is shown to have acted negligently") (citations omitted); *see also Rogers v. Envirodyne Indus., Inc.*, 214 Ill.App.3d 1025, 1028, 158 Ill.Dec. 683, 685, 574 N.E.2d 796, 798 (1st Dist.1991) (holding that a party's failure to be "in charge" under the Work Act also disposes of negligence claims against that party). Thus, a determination that GM was not "in charge" under the Work Act necessarily eliminates the plaintiffs' negligence claim.

AFFIRMED.